KENNETH MIXON et al., on Behalf of Themselves and All Other Persons Similarly Situated, Plaintiffs, COALITION FOR THE HOMELESS, Appellant, and WAYNE PHILLIPS, on Behalf of Himself and All Other Persons Similarly Situated, et al., Intervenors-Plaintiffs, v WILLIAM J. GRINKER, as Commissioner of the New York City Human Resources Administration, et al., Respondents.

First Department, June 5, 1990

APPEARANCES OF COUNSEL

*Virginia Shubert* for appellant.

*Ronald E. Sternberg* of counsel *(Leonard Koerner* with him on the brief; *Victor A. Kovner, Corporation Counsel,* attorney), for William J. Grinker, respondent.

*Andrea M.A. Osborne* of counsel *(Robert J. Schack* with her on the brief; *Robert Abrams, Attorney-General,* attorney), for Cesar A. Perales, respondent.

## OPINION OF THE COURT

ROSENBERGER, J.

This action was instituted by certain homeless men infected with the human immunodeficiency virus (HIV) on their own behalf and on behalf of others similarly situated, and by the Coalition for the Homeless, a not-for-profit organization which provides advocacy and direct services to homeless persons. Plaintiffs sought declaratory and injunctive relief compelling defendants, officials of the State and City of New York, to provide homeless persons infected with HIV, the virus which causes acquired immune deficiency syndrome (AIDS), AIDS-related complex (ARC) and other HIV-related illnesses, with medically appropriate housing. The action is premised on the contention that placing HIV-infected individuals whose immune systems are weakened, in large city shelters, where many occupants have infectious diseases, endangers the lives of HIV-infected individuals such as the named plaintiffs. Although the city has acknowledged that homeless persons with a diagnosis of AIDS as defined by the Federal Centers for Disease Control (CDC) are entitled to private, nonshelter housing, those persons infected with HIV or other AIDS-related illnesses not classified as AIDS by CDC are not provided with such accommodations.

After a motion for a preliminary injunction was filed on behalf of the three original named plaintiffs, the city agreed to provide them with noncongregate housing. The Supreme Court thereafter granted a preliminary injunction to Wayne Phillips, another homeless man suffering from an HIV-related illness, whose motion for leave to intervene was unopposed and granted by the court, compelling defendants to provide

him with shelter in a noncongregate facility as well. The court further denied defendants' motions to dismiss for nonjusticiability, failure to state a cause of action and failure to join necessary parties but granted the city's motion to dismiss the Coalition for the Homeless as a plaintiff for lack of standing. The city filed a notice of appeal which was thereafter withdrawn. The State did not appeal. The Coalition for the Homeless cross-appealed the dismissal of its complaint for lack of standing.

The Supreme Court found that the Coalition for the Homeless lacked standing to bring the action either in its own right or in a representative capacity. We disagree and modify the order accordingly.

The municipal defendants contend, and the Supreme Court agreed, that the Coalition lacked standing to sue in its *own right,* because it failed to demonstrate that it had suffered any injury in fact as a result of defendants' actions *(Matter of MFY Legal Servs. v Dudley,* 67 NY2d 706; *and see, Matter of Dental Socy. v Carey,* 61 NY2d 330). In *MFY Legal Servs.,* the Court of Appeals held that the not-for-profit legal services corporation's complaint, which sought to prohibit Justices of the Appellate Term, First Department, from issuing certain ex parte orders, was too speculative to demonstrate a cognizable interest because it merely alleged that defendants' actions in entering default judgments without inquests resulted in a greater demand for its services *(see also, Matter of Guild of Admin. Officers v County of Suffolk,* 126 AD2d 725, *lv denied* 69 NY2d 609).

In *Grant v Cuomo* (130 AD2d 154, *affd* 73 NY2d 820), the Coalition for the Homeless' claim that they suffered an injury by way of an added burden on their resources was rejected as too general to establish standing. We note that the Coalition's complaint in the instant case is phrased in similar language: "The Coalition for The Homeless is a not-for-profit corporation organized under the laws of the State of New York. It advocates for, and provides direct services to, homeless persons, many of whom are HIV-infected. The Coalition expends substantial resources in serving persons denied medically appropriate housing by defendants."

Injury in fact has been sufficiently alleged, however, since affidavits submitted by the named plaintiffs specify sums expended by the Coalition on their behalf. For example, the Coalition provided financial assistance to Kenneth Mixon so

that he could rent a private room on the Bowery. Plaintiff-intervenor Wayne Phillips rented a room in a hotel and at the YMCA with funds provided by the Coalition. In an affidavit submitted in opposition to defendants' motion to dismiss, an employee of the Coalition detailed the efforts taken by the organization on behalf of the homeless suffering from AIDS-related illnesses. Each of the named plaintiffs received assistance from the Coalition after refusing to return to city shelters where they were victims of violence or intimidation and where they were constantly exposed to infectious diseases which their HIV-infected systems could not tolerate. In alleging that their resources have not only been spent on advocating on behalf of the homeless but on providing noncongregate housing and in essence, medical assistance to HIV-infected homeless people, the Coalition has sufficiently alleged a specific burden on its resources, caused by defendants' failure to provide appropriate housing. These allegations are sufficient to establish injury-in-fact and, therefore, standing.

The Federal courts recognize the right of organizations to sue on their own behalf when the injury they allegedly suffered as a result of defendants' actions or inactions is a drain on their resources. In *Havens Realty Corp. v Coleman* (455 US 363), the Housing Opportunities Made Equal (HOME) organization alleged that a realty company's "steering practices" drained its resources. The Supreme Court held that the organization had standing to sue in its own right because "[i]f, as broadly alleged, petitioners' steering practices have perceptibly impaired HOME's ability to provide counseling and referral services for low- and moderate-income homeseekers, there can be no question that the organization has suffered injury in fact. Such concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests, see *Sierra Club* v. *Morton,* 405 U.S., at 739. We therefore conclude * * * that * * * it was improper * * * to dismiss for lack of standing the claims of the organization in its own right" *(Havens Realty Corp. v Coleman, supra,* at 379; *see also, Younger v Turnage,* 677 F Supp 16, where the Coalition for the Homeless, individual plaintiffs, and two other organizations, brought an action to compel the Veteran's Administration to adopt an outreach program to train the staff of homeless shelters and expedite homeless veterans' claims. The court held that the organizational plaintiffs' assertions that

they had expended their resources on behalf of the homeless veterans was sufficient to establish standing to sue in their own right).

The Coalition for the Homeless also contends that it has standing to bring this action in a representative capacity. While it is true that in order to establish standing as a representative of other individuals, an organization must be asserting the rights of at least one of its members and not be attempting to sue on its own behalf for a declaration of the rights of its potential clients *(see, Matter of MFY Legal Servs. v Dudley, supra),* we have held that organizations such as the Coalition for the Homeless, which represent individuals who are unable to seek a judicial remedy on their own behalf, have standing. In *Grant v Cuomo* (130 AD2d 154, *supra),* this court held that the Coalition had organizational standing in an action brought to compel the city to comply with the statutory mandate that reports of child abuse be investigated within 24 hours. It was found that since abused children were unable to seek judicial relief themselves, and that it was unlikely that their parents or caretakers, who were the object of claims of abuse, would undertake to secure a remedy, the organizational plaintiff had standing *(see also, Camfield v Perales,* NYLJ, Sept. 18, 1989, at 22, col 1 [Sup Ct, NY County]).

Although the individuals whose rights the Coalition seeks to assert in this case are adults and not children as in *Grant v Cuomo (supra),* the majority of desperately ill homeless individuals are as helpless as abused children and cannot, due to illness, poverty, myriad AIDS-related problems, unfamiliarity with their legal rights and the legal process, seek relief on their own behalf. As was stated in *Grant v Cuomo (supra,* at 159) "we cannot ignore the obvious fact that if organizations of this kind are denied standing, the practical effect would be to exempt from judicial review the failure of the defendants" to comply with their legal obligations. It was further noted that "[g]iven the obvious reality that the protection of abused or maltreated children is a central concern of our society, and given the historic relationship of organizations concerned with the care and protection of children to the goals sought to be achieved by the relevant statute, we are persuaded that Special Term was justified in denying the motion to dismiss as to the organizational plaintiffs" *(supra,* at 159).

It has been estimated that there are from 60,000 to 80,000 homeless people living in New York City, 25,000 of whom are housed in the city's shelters on any given night. While 14,000

individuals have been diagnosed as having AIDS in New York, as many as 400,000 people in the city may be infected with the HIV virus according to government statistics. While the municipal defendants have recognized the necessity of providing noncongregate housing for those with CDC-defined AIDS, such facilities have not been made available to those suffering from HIV-related illnesses even though the effects of such illnesses may indeed be devastating and life-threatening. The immune systems of those infected with HIV illnesses are just as susceptible to infectious diseases, such as tuberculosis, which have been found to be pervasive in the city shelter system. Accordingly, the Supreme Court's denial of standing to the Coalition for the Homeless to seek review of defendants' purported failure to comply with their legal obligations was improper.

The order of the Supreme Court, New York County (Edward H. Lehner, J.), dated January 11, 1989, which, *inter alia,* granted defendant City of New York's motion to dismiss the complaint of the Coalition for the Homeless for lack of standing, should be modified, on the law, the facts, and in the exercise of discretion, by denying the motion to dismiss and reinstating the complaint, without costs, and the order should be otherwise affirmed.

MURPHY, P. J., ROSS, KASSAL and WALLACH, JJ., concur.

Order, Supreme Court, New York County, entered on or about January 11, 1989, unanimously modified, on the law, the facts, and in the exercise of discretion, by denying the motion to dismiss and reinstating the complaint and otherwise affirmed, without costs and without disbursements.