*277
 
 OPINION OF THE COURT
 

 Ciparick, J.
 

 This case requires that we decide whether plaintiffs have standing to challenge an Executive Order issued by the Governor. They assert that the Order violates the principle of separation of powers under the New York State Constitution and also violates the State Administrative Procedure Act (SAPA). We hold that plaintiffs lack standing to maintain this action, and reach no other issues.
 

 On November 30, 1995, a month before the scheduled sunset of the legislation that created the Office of Regulatory and Management Assistance (ORMA), and for the purpose of continuing the rule-making review process, Governor Patakf issued Executive Order No. 20
 
 (see,
 
 Executive Law § 893; 9 NYCRR 5.20). It established the position of State Director of Regulatory Reform and an office known as the Governor’s Office of Regulatory Reform (GORR). The Executive Order sets forth various criteria by which GORR — whose members are appointed by the Governor — is to judge proposed rules offered by executive branch administrative agencies. GORR may authorize publication of the rule in the State Register or require specified changes be made before publication, or it may prohibit the publication of the rule entirely. This power to prohibit publication effectively blocks a proposed rule from promulgation.
 

 Plaintiffs challenge the authority of the Governor to implement Executive Order No. 20. They claim that the Governor has improperly given a small number of his political appointees the power to preempt rule making by most agencies of the State. Plaintiffs contend that Executive Order No. 20 circumvents the notice and public comment requirements of SAPA and the rule-making authority statutorily vested in the various agency heads, and usurps the authority of the legislative branch, thus violating the constitutional doctrine of separation of powers.
 

 The challenge follows two disapprovals by GORR of a Department of Health proposal to amend 10 NYCRR 405.28 (d), which continues to require all urban hospitals in the State to have an organized social work department under the direction of a qualified social worker. The proposed change would have required that the director of each organized social work department hold a master’s degree in social work (MSW).
 

 Plaintiffs — one individual taxpayer as well as several organizations representing either social workers, patients who
 
 *278
 
 receive social work services or voter groups — brought this action seeking a declaratory judgment that Executive Order No. 20 was unconstitutional. Supreme Court, on motions from both sides for summary judgment, determined that the organizations had common-law standing and the individual plaintiff, Rudder, had statutory standing pursuant to State Finance Law § 123-b.
 

 On the merits, however, Supreme Court held that Executive Order No. 20 did not run afoul of the separation of powers doctrine, nor did it conflict with SAPA. The Appellate Division affirmed, but without reaching the merits held that none of the plaintiffs had standing to challenge the Governor’s authority to issue the Executive Order. The two-Justice dissent disagreed with the majority’s conclusion that no specific harm was suffered by the members of the organizations representing social workers; the dissenters noted that some of the members would have had increased employment opportunities had the proposed rule been adopted, and “the de facto veto of the rule had the effect of depriving them of that pecuniary and professional advantage” (246 AD2d 183, 188). Furthermore, in the dissent’s view, a holding that there was no standing “would have the practical effect of immunizing the executive order from judicial scrutiny”
 
 (id.,
 
 at 189). Plaintiffs appeal as of right, and we now affirm.
 

 This case turns on the question of standing. Plaintiffs proffer three theories: organizational, citizen-taxpayer and voter standing.
 

 Where organizations seek standing to challenge administrative agency actions, there must exist concrete adversarial interests requiring judicial intervention
 
 (Society of Plastics Indus. v County of Suffolk, 11
 
 NY2d 761, 772;
 
 see, Matter of Dairylea Coop. v Walkley,
 
 38 NY2d 6, 9;
 
 Schieffelin v Komfort,
 
 212 NY 520, 530). Thus, an organizational plaintiff must demonstrate a harmful effect on at least one of its members; it must show that “the interests it asserts are germane to its purposes so as to satisfy the court that it is an appropriate representative of those interests;” and it must establish that the case would not require the participation of individual members
 
 (Society of Plastics Indus. v County of Suffolk, supra, 77
 
 NY2d, at 775). The first two prongs of this inquiry are at issue here. The organizational plaintiffs contend that they represent individuals who have been injured by GORR’s actions, and that they have specific interests advanced by the regulations in question.
 

 
 *279
 
 The two main groups of organizational plaintiffs here— those that represent social workers and those that represent patients who receive social work services — fail to allege any cognizable harm to their members. No doubt the members of the New York City Chapter of the National Association of Social Workers and the 1199 National Health and Human Service Employees Union who hold MSW’s will not have the benefit of increased job prospects because GORR blocked the proposed Department of Health rule change. However, this does not mean that any one individual member with an MSW has been or will be injured. Unlike
 
 Subcontractors Trade Assn. v Koch
 
 (62 NY2d 422, 426-427) and
 
 Matter of Dental Socy. v Carey
 
 (61 NY2d 330, 335), the organization members who hold MSW’s are not prohibited from seeking a certain portion of available jobs, nor deprived of monies to which they may be statutorily entitled. Rather, they are merely not given preference over those who do not hold an MSW degree. At best, this amounts to only “tenuous” and “ephemeral” harm, which is insufficient to trigger judicial intervention (see,
 
 Society of Plastics Indus. v County of Suffolk, supra,
 
 77 NY2d, at 777-778).
 

 Although great weight is placed on the “zone of interests” inquiry in challenges to administrative agency actions, the interests of the organizations representing MSW’s are not entirely germane to the relief they seek in this litigation
 
 (see, Society of Plastics Indus. v County of Suffolk, supra,
 
 77 NY2d, at 773;
 
 Matter of Dairylea Coop. v Walkley, supra,
 
 38 NY2d, at 9;
 
 see also, Clarke v Securities Indus. Assn.,
 
 479 US 388;
 
 Data Processing Serv. Orgs. v Camp,
 
 397 US 150). These organizations have failed to identify any statutory or constitutional provision intended to prevent economic injury resulting from decreased employment opportunities
 
 (see, Society of Plastics Indus. v County of Suffolk, supra,
 
 77 NY2d, at 777). In addition, neither of these two organizations is alleged to represent solely individuals with MSW’s. Instead, the record makes clear that these organizations represent both those social workers who have MSW’s and those social workers who do not. As a result, it cannot be said that the interests of the organizations dovetail with those claims they put forth here. By seeking to enhance job opportunities of only some of their members— those holding MSW’s — these groups implicitly seek to diminish job opportunities for other of their members — those otherwise qualified social workers who do not hold MSW’s. This imperfect alignment of interests, when considered along with the
 
 *280
 
 negligible injury asserted, leads to the conclusion that these organizations lack standing.
 

 Turning to the plaintiff organizations that represent patients who receive social work services,
 
 *
 
 the allegations of specific injury are even more tenuous. Although a principal purpose of these organizations is improving care for their members, which includes improving social work services, these organizations fail to point to a specific harm to any of their members which could be attributed to the disapproval of the Department of Health’s proposed rule. Indeed, plaintiffs do not claim that any one person has suffered, but rather assert conclusorily that the delivery of social work could be better if the proposed rule were allowed to go forward.
 

 Without an allegation of injury-in-fact, plaintiffs’ assertions are little more than an attempt to legislate through the courts
 
 (see, Matter of Transactive Corp. v New York State Dept. of Social Servs.,
 
 92 NY2d 579, 587;
 
 Matter of Mobil Oil Corp. v Syracuse Indus. Dev. Agency,
 
 76 NY2d 428, 433-434). Grievances generalized to the degree that they become broad policy complaints regarding the appropriate qualifications for those who direct the delivery of hospital social work are best left to the elected branches
 
 (see, Society of Plastics Indus. v County of Suffolk, supra,
 
 77 NY2d, at 773). Mindful, however, that we do not reach the merits of a case in a discussion concerning standing, we caution that this does not mean that a future plaintiff could not allege the requisite injury based on GORR’s decision not to pursue the proposed rule. We conclude only that no organizational plaintiff has done so here.
 

 Furthermore, this is not a case where to deny standing to these plaintiffs would insulate government action from judicial scrutiny
 
 (Boryszewski v Brydges,
 
 37 NY2d 361, 364;
 
 see generally,
 
 5 Weinstein-Korn-Miller, NY Civ Prac If 3001.04, at 30-28 — 30-33). Other actions by GORR may trigger the specific harm necessary to confer standing, and the Legislature retains its power to address Executive Order No. 20
 
 (see, Society of Plastics Indus. v County of Suffolk, supra,
 
 77 NY2d, at 779).
 

 Aside from organizational standing, plaintiff Rudder claims that she has standing under State Finance Law § 123-b
 
 *281
 
 to challenge the authority of the Executive Order. Like the plaintiffs who sought standing in
 
 Matter of Transactive Corp. v New York State Dept. of Social Servs.,
 
 Rudder here “essentially seeks ‘to obtain judicial scrutiny of the [State’s] nonfiscal activities’ ” (92 NY2d, at 589, quoting
 
 Matter of Urban League v County of Monroe,
 
 49 NY2d 551, 556). Since most activities can be viewed as having some relationship to expenditures, we emphasized in
 
 Transactive
 
 that too broad a reading of section 123-b would create standing for any citizen who had the desire to challenge virtually all governmental acts. The claims here regarding GORR’s nonfiscal rule-making review function do not demonstrate a sufficient nexus to fiscal activities of the State to allow for section 123-b standing.
 

 Rudder additionally seeks standing as a voter. Two other plaintiff organizations, the Women’s City Club of New York and the League of Women Voters of New York State, also raise claims that, as a result of Executive Order No. 20 having been issued, their vote has been diluted and their franchise impaired. These plaintiffs, however, point to no specific constitutional provision having a connection to the franchise and no statute even tangentially related to the right to vote (see,
 
 Matter of Schulz v New York State Executive,
 
 92 NY2d 1, 7;
 
 Matter of Schulz v State of New York,
 
 81 NY2d 336, 345). Although in some circumstances, not now before us, allegations of governmental action impinging upon the constitutional separation of powers may bear so heavily on the right to vote as to dilute or impair it, plaintiffs raise no claim of injury fairly attributable to the sphere of voting rights.
 

 In that none of the plaintiffs here has standing to sue, we reach no other issues.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine and Rosenblatt concur; Judge Wesley taking no part.
 

 Order affirmed, with costs.
 

 *
 

 These organizations are the Nursing Home Community Coalition of New York State, Inc., Friends and Relatives of the Institutionalized Aged, Inc., Disabled in Action of Metropolitan New York, Ltd., New York Statewide Senior Action Council, Inc., Center for Medical Consumers and Healthcare Information, Inc., and the Coalition of Institutionalized Aged and Disabled, Inc.