OPINION OF THE COURT
Anil C. Singh, J.
The New York Criminal Bar Association and individual petitioner Anastasios Sarikas, a member of the Assigned Counsel Plan of the City of New York, move for leave to intervene in this proceeding as party petitioners pursuant to CPLR 1012 and 7802 and to amend the caption to set forth the names of the intervenors-petitioners. Petitioner and respondent oppose the application.
Under CPLR 7802 (d), this court is authorized to allow “other interested persons” to intervene in this proceeding. Intervention lies in the “sound discretion of the court” (Matter of White v Incorporated Vil. of Plandome Manor, 190 AD2d 854, 854 [2d Dept 1993], lv denied 83 NY2d 752 [1994]).
CPLR 7802 (d) grants the court broader power to allow intervention in a CPLR article 78 proceeding than is provided pursuant to either mandatory or permissive intervention rules in an action (Matter of Bernstein v Feiner, 43 AD3d 1161, 1162 *163 [2d Dept 2007]). The general rule is that intervention should be permitted where the intervenor has a real and substantial interest in the outcome of the proceedings. (Id.) “The bases for permissive intervention in Article 78 proceedings are also broader than the bases for standing to originate the proceeding” (6 NY Jur 2d, Article 78 § 223, citing O’Brien v Barnes Bldg. Co., 85 Misc 2d 424 [Sup Ct, Suffolk County 1974], affd sub nom. O’Brien v Biggane, 48 AD2d 1018 [2d Dept 1975]).
Although there are no cases precisely on point with the unique facts of this case, the court’s independent research unearthed two cases illustrating circumstances where it was appropriate for the court to exercise its discretion to permit an entity to intervene.
The first case is Matter of New York City Health & Hosps. Corp. v City of New York (85 Misc 2d 501 [Sup Ct, NY County 1976], affd 56 AD2d 535 [1st Dept 1977]). In that case, petitioner New York City Health and Hospital Corporation commenced an article 78 proceeding seeking to compel respondent, the City of New York, to comply with various monetary obligations, including tax levy payments and Medicaid payments. Various interns and residents in New York City hospitals, individually and as officers of the committee of interns and residents, moved to intervene as “interested persons” under CPLR 7802 (d). The movants asserted that their salaries and their professional futures hinged in large part on the adequate flow of funds from respondent to petitioner. The court granted the motion to intervene, noting the recent liberalization and expansion of the rights of persons with interest in the outcome of litigation to participate in the proceedings.
Mixon v Grinker (157 AD2d 423 [1st Dept 1990]) is another enlightening case. In Mixon, certain homeless men infected with the human immunodeficiency virus (HIV), on their own behalf and on behalf of others similarly situated, and the Coalition for the Homeless, a not-for-profit organization which provided advocacy and direct services to homeless persons, instituted an action against officials of the State and City of New York to compel the defendants to provide homeless persons infected with HIV with medically appropriate housing. The Supreme Court held that the Coalition for the Homeless lacked standing to bring the action either in its own right or in a representative capacity.
The First Department disagreed and modified the order. The court wrote:
*164 “While it is true that in order to establish standing as a representative of other individuals, an organization must be asserting the rights of at least one of its [own] members and not be attempting to sue on its own behalf for a declaration of the rights of its potential clients, we have held that organizations such as the Coalition for the Homeless, which represent individuals who are unable to seek a judicial remedy on their own behalf, have standing.” {Mixon, 157 AD2d at 427 [citation omitted].)
It is important to bear in mind that the courts of this state have liberalized and expanded the rights of persons with an interest in the outcome of litigation to take part in the proceedings (Siegel, NY Prac § 178, at 307 [4th ed]). In light of this trend, and under the specific circumstances of this proceeding, it is clearly appropriate for the court to exercise its discretion and permit intervention.
The test of whether an organization has standing to challenge action by a government agency was summarized by the Court of Appeals in New York State Assn. of Nurse Anesthetists v Novello (2 NY3d 207 [2004]). There, the Court wrote
“Standing is, of course, a threshold requirement for a plaintiff seeking to challenge governmental action. The two-part test for determining standing is a familiar one. First, a plaintiff must show ‘injury in fact,’ meaning that plaintiff will actually be harmed by the challenged administrative action. As the term itself implies, the injury must be more than conjectural. Second, the injury a plaintiff asserts must fall within the zone of interests or concerns sought to be promoted or protected by the statutory provision under which the agency has acted. To establish standing, an organizational plaintiff — such as plaintiff here — must show that at least one of its members would have standing to sue, that it is representative of the organizational purposes it asserts and that the case would not require the participation of individual members.” (Nurse Anesthetists, 2 NY3d at 211 [citations omitted].)
To determine whether a party has standing, the court must examine the relevant statutes and precedents in order to ascertain the presence or absence of a legislative intention to preclude review (see for example Matter of George v Bloomberg, 2 AD3d 294 [1st Dept 2003]). “Only where there is a clear *165 legislative intent negating review or lack of injury in fact will standing be denied” (Matter of Dairylea Coop. v Walkley, 38 NY2d 6, 11 [1975] [citations omitted]).
The relevant statutes and precedent support intervention. County Law § 722 et seq. does not preclude review. In fact, section 722 authorizes the court to appoint counsel where a conflict exists. Historically, that role has been fulfilled by attorneys appointed pursuant to County Law article 18-B. The members of New York Criminal Bar Association — including the individual petitioner, Anastasios Sarikas, as a member of 18-B panels— have provided legal representation to indigent criminal defendants.
In New York County Lawyers’ Assn. v Pataki (188 Misc 2d 776 [Sup Ct, NY County 2001], affd on other grounds 294 AD2d 69 [1st Dept 2002]), this court thoroughly discussed what a bar association must demonstrate to establish standing to sue. In Pataki, New York County Lawyers’ Association (NYCLA) sued the State of New York and Governor George E. Pataki seeking declaratory and injunctive relief, pursuant to CPLR 3001 and 6301 and 42 USC § 1983, challenging the compensation levels and limits for assigned private counsel, and barring interference with performance of its obligations under the assigned counsel program. NYCLA claimed third-party standing to assert the rights of its member attorneys’ 18-B and Judiciary Law § 35 clients. In addition, NYCLA claimed organizational standing to assert the rights of its member attorneys who were members of the Assigned Counsel Plan.
The court held that the bar association had standing to sue, writing:
“This court . . . finds NYCLA has suffered an injury in fact within the zone of interests of the court rules implemented to facilitate effective assistance of counsel to the indigent from the statutes setting the compensation rates. NYCLA’s injury is certainly different from that of the public at large, and substantially different from most other bar groups and associations in that it plays a vital role in how the . . . criminal justice system affect[s] the poor in New York City. (Pataki, 188 Misc 2d at 782.)
For similar reasons, I find that the intervenors have established injury-in-fact, for the changes implemented by the City in *166 chapter 13 of title 43 of the Rules of the City of New York may substantially affect the ability of Sarikas and the New York Criminal Bar Association to be appointed as conflict counsel and to represent indigent criminal defendants in a manner that is consistent with constitutional mandates.
The intervenors fall within the zone of interest of County Law § 722. The New York Criminal Bar Association seeks to ensure that the City of New York complies with County Law § 722 and implements a system that allows for the effective assistance of counsel.
Petitioner is correct that the New York Criminal Bar Association had no historical role under the 1965 Bar Plan or its administration. However, the intervenors do not seek to enforce any right under the 1965 Bar Plan. Rather, they seek to compel compliance with County Law § 722. Further, petitioner at oral argument agreed that the New York Criminal Bar Association would have the right to bring its own proceeding. Granting intervention may result in some delay, but it serves judicial economy to have the issues resolved in one forum.
Accordingly, it is ordered that Anastasios Sarikas and the New York Criminal Bar Association’s motion for leave to intervene as party petitioners is granted; and it is further ordered, that respondent shall answer or move against the intervenors’ petition within 10 days of today; and it is further ordered, that intervenors-petitioners shall serve the proposed petition upon plaintiffs/petitioners and respondent within 10 days of today; and it is further ordered, that plaintiffs/petitioners and respondent shall serve upon intervenors-petitioners copies of all papers served and hereafter to be served ordered, that the caption hereinafter read:
In the Matter of the Application of
THE NEW YORK COUNTY LAWYERS’
ASSOCIATION, THE BRONX COUNTY BAR
ASSOCIATION, THE BROOKLYN BAR
ASSOCIATION, THE QUEENS COUNTY
BAR ASSOCIATION, THE RICHMOND
COUNTY BAR ASSOCIATION,
Plaintiffs/Petitioners,
*167 THE NEW YORK CRIMINAL BAR ASSOCIATION, INC., ANASTASIOS SARIKAS, Member of the Assigned Counsel Plan of the City of New York,
Intervenors-Petitioners,
For a Judgment Under Article 78 of the CPLR,
v
MICHAEL R. BLOOMBERG, in his official capacity as Mayor of the City of New York, the CITY OF NEW YORK and JOHN FEINBLATT, in his official capacity as the Criminal Justice Coordinator for the Office of the Mayor of the City of New York,
Defendants/Respondents.