*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:   July 17, 2014                   517940
_____

In the Matter of ANIMAL
    LEGAL DEFENSE FUND, INC.,
    et al.,
                        Appellants,

        v                                    MEMORANDUM AND ORDER

DARREL J. AUBERTINE, as
    Commissioner of Agriculture
    and Markets, et al.,
                        Respondents,
                        et al.,
                        Respondent.
_____

Calendar Date:   May 27, 2014

Before:   Lahtinen, J.P., McCarthy, Garry, Lynch and Clark, JJ.

                    _____


        The Vincelette Law Firm, Albany (Elizabeth Hallinan, Animal
Legal Defense Fund, Cotati, California, pro hac vice, of
counsel), for appellants.

        Eric T. Schneiderman, Attorney General, Albany (Andrew B.
Ayers of counsel), for Darrel J. Aubertine and another,
respondents.

        David Lenefsky, New York City, for HVFH, LLC, respondent.

                    _____


Lahtinen, J.P.

        Appeal from a judgment of the Supreme Court (McGrath, J.),
entered January 31, 2013 in Albany County, which, in a combined
proceeding pursuant to CPLR article 78 and action for declaratory
judgment, granted certain respondents' motions to dismiss the

petition/complaint.

The predominant method of producing the food known as foie gras is to force feed ducks or geese so as to enlarge their livers (see Matter of Humane Socy. of U.S., Inc. v Brennan, 63 AD3d 1419, 1419 n 1 [2009]).  Petitioners contend that the force feeding procedure causes the animals to be diseased and the food product from them to be adulterated (see Agriculture and Markets Law § 200).  Petitioner Animal Legal Defense Fund, Inc. (hereinafter ALDF) is a non-profit California corporation that advocates for the protection of animals, and petitioner Daniel Stahlie is a New York resident who occasionally consumes foie gras, but is allegedly concerned that foie gras from force-fed animals increases the risk that he will develop a medical condition known as secondary amyloidosis.  This combined CPLR article 78 proceeding and declaratory judgment action was commenced against respondents Commissioner of Agriculture and Markets and the Department of Agriculture and Markets (hereinafter collectively referred to as the state respondents), as well as New York corporations that produce foie gras. Petitioners seek, among other things, a declaration that force-fed foie gras[1] is an adulterated food product and an order prohibiting the state respondents from allowing foie gras into the human food supply.  Pre-answer motions to dismiss asserted, among other things, that petitioners lacked standing.  Supreme Court granted dismissal upon such ground and petitioners appeal.

Standing "requir[es] that the litigant have something truly at stake in a genuine controversy" (Saratoga County Chamber of Commerce v Pataki, 100 NY2d 801, 812 [2003], cert denied 540 US 1017 [2003]).  Petitioners have "the burden of establishing both an injury in fact and that the asserted injury is within the zone of interests sought to be protected by the statute alleged to have been violated" (Matter of Association for a Better Long Is., Inc. v New York State Dept. of Envtl. Conservation, 23 NY3d 1, ___, 2014 NY Slip Op 02216, *3 [2014]; see Society of Plastics

_____

[1] Since petitioners are challenging only force-fed foie gras, all subsequent references herein to foie gras are to force-fed foie gras.

Indus. v County of Suffolk, 77 NY2d 761, 772-773 [1991]).  The injury in fact element must be based on more than conjecture or speculation (see New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d 207, 211 [2004]; Matter of Clean Water Advocates of N.Y., Inc. v New York State Dept. of Envtl. Conservation, 103 AD3d 1006, 1008 [2013], lv denied 21 NY3d 862 [2013]).

Petitioners contend that Stahlie has standing based upon allegations that he occasionally eats foie gras at parties and other events and that this may increase his risk of developing secondary amyloidosis.  They rely primarily upon Baur v Veneman (352 F3d 625 [2d Cir 2003]) as authority for standing to compel government action when a consumer faces an enhanced risk of injury from exposure to a potentially unsafe product.  Although the Second Circuit found standing in Baur, it cautioned about "the potentially expansive and nebulous nature of enhanced risk claims" and reiterated that "the injury-in-fact analysis is highly case-specific" (id. at 637).  "[I]njury based on exposure to potentially or actually harmful products can take at least two forms: (1) 'uncontested exposure to a potentially harmful substance' . . . and (2) 'potential exposure to an undisputedly dangerous contaminant'" (Natural Resources Defense Council, Inc. v United States Food & Drug Admin., 710 F3d 71, 83 [2d Cir 2013], quoting Baur v Veneman, 352 F3d at 634 n 8).

Baur was an example of the second form of enhanced risk standing as it involved a disease ("mad cow disease") that was undisputedly very serious in that it had already caused many human fatalities.  The alleged exposure was not as clear since it came from a narrow aspect of the industry (i.e., meat from downed cows) and no deaths had occurred yet in this country.  In that case, "critical factors" in finding standing also included that the government was being challenged for inactivity in an area where it had issued "studies and statements confirm[ing] several of [the plaintiff's] key allegations" and the plaintiff's "risk of harm [arose] from an established government policy" (Baur v Veneman, 352 F3d at 637; see State of New York v United States Army Corps of Engineers, 896 F Supp 2d 180, 193 [ED NY 2012]).

A case finding the first form of enhanced risk standing is Natural Resources Defense Council, Inc. v United States Food &

Drug Admin. (supra [hereinafter referred to as NRDC]).  NRDC involved frequent exposure at work — up to 50 times per day — to a cleaning product that allegedly posed a health risk (id. at 81).  Although the extent of the risk in NRDC was still a subject being studied, there was "no genuine dispute that [the product was] potentially harmful" (id.).  Similar to Baur, the Food and Drug Administration itself had issued a consumer notice (see id. at 78) and had acknowledged "valid concerns" about use of the cleaning product as well as its potential long-term serious health effects (id. at 78, 82).  Succinctly stated, in Baur, the risk of exposure was uncertain but the harm was clear and significant, whereas in NRDC, the exposure was manifest and substantial but the harm — while potentially serious — was not yet certain (id. at 83).

Here, the risk of exposure is minimal and the indication of harm uncertain.  Although petitioners included expert opinion indicating a possible risk of secondary amyloidosis from foie gras for some individuals with certain medical conditions, they cite no situation of any person ever suffering secondary amyloidosis that was linked to foie gras.  Stahlie does not contend that he has any of the underlying medical conditions that may be related to an increased risk of secondary amyloidosis.  His exposure to foie gras is infrequent.  There are no studies, statements or warnings by the regulating agency or other pertinent governmental entity regarding a relevant risk related to the occasional consumption of foie gras.  Stahlie has, at best, occasional exposure to a product that has not yet been connected by any actual case to the purported risk of harm alleged by petitioners.  We agree with Supreme Court that, even affording petitioners the benefit of every favorable inference, their allegations regarding an injury in fact to Stahlie are speculative and rest upon conjecture.

Next, petitioners argue that ALDF's use of its resources to investigate and litigate the alleged conduct of the state respondents establishes standing for ALDF.  We are unpersuaded.  Standing has been recognized in a narrow line of cases where an organization that helps a particular group of people must expend funds and divert organization resources because of conduct that directly interferes with the services that the organization

provides to its clients (see e.g. Havens Realty Corp. v Coleman, 455 US 363 [1982] [persons seeking affordable housing]; Mixon v Grinker, 157 AD2d 423 [1990] [HIV-infected homeless persons]). Here, ALDF brought the litigation and it is expending funds in a manner consistent with its stated core mission of using the legal system to advance its policy regarding animal cruelty. Finding standing under the situation presented here would essentially eliminate the standing requirement any time an advocacy organization used its resources to challenge government action or inaction (cf. Nnebe v Daus, 644 F3d 147, 157-158 [2d Cir 2011]; Matter of Stray from the Heart, Inc. v Department of Health & Mental Hygiene of the City of N.Y., 83 AD3d 521, 522 [2011], affd 20 NY3d 946 [2012]; Henry v Isaac, 228 AD2d 558, 559 [1996]).

Stahlie has not established that he has citizen taxpayer standing pursuant to State Finance Law § 123-b. The statute is narrowly construed and "[c]laims which seek review of a [s]tate actor's alleged mismanagement of funds or the arbitrary and capricious distribution of funds lawfully allocated to an agency are not covered" (Matter of Transactive Corp. v New York State Dept. of Social Servs., 92 NY2d 579, 589 [1998]; see Empire State Ch. of Associated Bldrs. & Contrs., Inc. v Smith, 21 NY3d 309, 323 [2013]). While petitioners question the wisdom of the state respondents' decision not to declare foie gras an adulterated product, the state respondents had authority to make such a decision and did not illegally expend funds in doing so. Petitioners "have not alleged 'a sufficient nexus to fiscal activities of the [s]tate to allow for [State Finance Law §] 123-b standing'" (Empire State Ch. of Associated Bldrs. & Contrs., Inc. v Smith, 21 NY3d at 323, quoting Rudder v Pataki, 93 NY2d 273, 281 [1999]).

The remaining arguments, to the extent properly preserved, have been considered and are without merit.

McCarthy, Garry, Lynch and Clark, JJ., concur.

ORDERED that the judgment is affirmed, without costs.


ENTER:

Robert D. Mayberger
Clerk of the Court