Matter of New York State Bd. of Regents v State Univ. of N.Y. (2019 NY Slip Op 07458)





Matter of New York State Bd. of Regents v State Univ. of N.Y.


2019 NY Slip Op 07458


Decided on October 17, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 17, 2019

527050

[*1]In the Matter of New York State Board of Regents et al., Respondents,
v
State University of New York et al., Appellants, et al., Respondent. (Proceeding No. 1.)
In the Matter of New York State United Teachers, by its President Andrew Pallotta, et al., Respondents,
v
State of New York, Respondent, and State University of New York et al., Appellants. (Proceeding No. 2.)

Calendar Date: September 6, 2019

Before: Garry, P.J., Egan Jr., Lynch and Pritzker, JJ.


Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP, Lake Success (Matthew F. Didora of counsel), for State University of New York and others, appellants.
Robert L. Dunn, New York City (Michael J. Hutter of Powers & Santola, LLP, Albany, of counsel), for Success Academy Charter Schools — NYC, appellant.
Greenberg Traurig, LLP, Albany (Henry M. Greenberg of counsel), for New York State Board of Regents and others, respondents.
Robert T. Riley Jr., General Counsel, Latham (Michael J. Del Piano of counsel), Stroock & Stroock & Lavan LLP, New York City, and Beth A. Norton, New York City, for New York State United Teachers and others, respondents.
Jay Worona, Latham, for New York State School Boards Association, Inc. and another, amici curiae.



Garry, P.J.
Appeal from a judgment of the Supreme Court (Young, J.), entered June 20, 2018 in Albany County, which granted petitioners' applications, in two combined proceedings pursuant to CPLR article 78 and actions for declaratory judgment, to annul certain regulations promulgated by respondent State University of New York Board of Trustees' Charter Schools Committee.
In October 2017, respondent State University of New York Board of Trustees' Charter School Committee (hereinafter the Committee) promulgated regulations (see 8 NYCRR part 700 [hereinafter the regulations]) that purported to establish an independent licensure process for teachers in certain charter schools as a substitute for the teacher certification system established by petitioners State Education Department and State Board of Regents. The Committee asserts that the independent licensure process is necessary to alleviate a teacher shortage. Respondents Success Academy Charter Schools — NYC (hereinafter SACS) and Bronx Charter School for Better Learning submitted plans for independent licensure programs pursuant to the regulations, and the Committee approved them. Thereafter, these two combined proceedings pursuant to CPLR article 78 and actions for declaratory judgment were commenced seeking to, among other things, annul the regulations on the grounds that they are in excess of the Committee's authority under Education Law § 355 (2-a), conflict with Education Law article 56 (hereinafter the Charter Schools Act) and other provisions of the Education Law, violate the separation of powers doctrine and were not promulgated in accordance with the State Administrative Procedure Act (hereinafter SAPA).[FN1] Petitioners in proceeding No. 1 are the Board of Regents, the Education Department, the Chancellor of the Board of Regents, the University of the State of New York, and the Commissioner of Education. Petitioners in proceeding No. 2 are the New York State United Teachers (hereinafter NYSUT), the United Federation of Teachers, Local 2 (hereinafter UFT), the National Association for the Advancement of Colored People, New York State Conference, Robert Hunter Schoenfeld (a teacher), Edwin K. Bradley (a teacher), and Felicia Grace (a parent).
Before joining issue, petitioners in proceeding No. 1 moved for a temporary restraining order and preliminary injunction to, among other things, enjoin the implementation of the regulations. In response, the Committee and respondents State University of New York (hereinafter SUNY), the SUNY Board of Trustees, the Chancellor of SUNY, the Chair of the SUNY Board of Trustees, the SUNY Charter Schools Institute and the Chair of the Committee (hereinafter collectively referred to as the SUNY respondents) moved in proceeding No. 2 and cross-moved in proceeding No. 1 for an order dismissing the amended petitions/complaints. The SUNY respondents asserted that petitioners in both proceedings lacked standing to challenge the regulations and that petitioners in proceeding No. 1 lacked the capacity to sue. Following oral argument, Supreme Court granted the amended petitions/complaints, vacated the regulations and enjoined their implementation. The court found, among other things, that the Education Department and the Commissioner have standing, that Education Law § 355 (2-a) does not authorize the Committee to promulgate regulations that alter minimum teacher certification requirements, and that the regulations were not promulgated in accordance with SAPA.[FN2] The SUNY respondents and SACS (hereinafter collectively referred to as respondents) appeal.
We turn first to the issues of capacity and standing. "Capacity to sue is a threshold matter allied with, but conceptually distinct from, the question of standing. As a general matter, capacity 'concerns a litigant's power to appear and bring its grievance before the court'" (Silver v Pataki, 96 NY2d 532, 537 [2001], quoting Community Bd. 7 of Borough of Manhattan v Schaffer, 84 NY2d 148, 155 [1994]). Governmental entities such as petitioners in proceeding No. 1 have capacity to sue only when it is based upon a "concrete statutory predicate. Capacity to sue may be expressly granted in enabling legislation or it may be inferred from review of the entity's statutory functions or responsibilities" (Matter of Graziano v County of Albany, 3 NY3d 475, 479 [2004] [internal quotation marks and citation omitted]). Pursuant to the Education Law, the Commissioner is required to "enforce all general and special laws relating to the educational system of the state and execute all educational policies determined upon by the [B]oard of [R]egents" (Education Law § 305 [1]). Further, Education Law § 308 provides that the Commissioner has the power and the duty "to cause to be instituted such proceedings or processes as may be necessary to properly enforce and give effect to any provision in [the Education Law] or in any other general or special law pertaining to the school system of the state or any part thereof or to any school district or city." Accordingly, the Commissioner, acting in her roles as the chief executive officer of the Education Department and the Board of Regents, has both express and implied capacity to bring proceeding No. 1 (see Education Law § 305 [1]; Hodgkins v Central School Dist. No. 1, 48 AD2d 302, 304-305 [1975], lv denied 42 NY2d 807 [1977]).
To establish standing, a petitioner must show that it "ha[s] something truly at stake in a genuine controversy" (Matter of Animal Legal Defense Fund, Inc. v Aubertine, 119 AD3d 1202, 1203 [2014] [internal quotation marks and citation omitted]). To do so, it must "establish[] both an injury-in-fact and that the asserted injury is within the zone of interests sought to be protected by the statute alleged to have been violated" (Matter of Association for a Better Long Is., Inc. v New York State Dept. of Envtl. Conservation, 23 NY3d 1, 6 [2014]; see Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 772-773 [1991]). Petitioners in proceeding No. 1 assert that the Commissioner has exclusive statutory authority to promulgate regulations governing the certification of public school teachers, to certify qualified individuals to teach in public schools, and to register teacher preparation programs in this state (see Education Law §§ 207, 3004; 8 NYCRR part 80). They further assert that the regulations conflict with Education Law §§ 2854 (3) (a-1) and 3602-ee, which require teachers employed in charter schools and charter school pre-kindergarten programs to be certified according to the same requirements that apply to other public school teachers, with certain limited exceptions. The Commissioner averred by affidavit that the regulations usurp the Commissioner's authority, contravene the purposes and policies of the Charter Schools Act and Education Law § 3004 and will injure petitioners in proceeding No. 1 and the students whose education they are charged with protecting by permitting unqualified persons to teach in SUNY-authorized charter schools. These allegations are sufficient to establish that the claimed injuries fall within the zone of interests sought to be protected by the Education Law and that the Commissioner has suffered "direct harm," consisting of "injury that is . . . different from that of the public at large" (Society of Plastics Indus. v County of Suffolk, 77 NY2d at 774; accord Matter of Sierra Club v Village of Painted Post, 26 NY3d 301, 306 [2015]). Having found that the Commissioner has standing, we need not render a determination as to the remaining petitioners in proceeding No. 1 (see Saratoga County Chamber of Commerce v Pataki, 100 NY2d 801, 813 [2003], cert denied 540 US 1017 [2003]).
We reach a different conclusion as to proceeding No. 2. The licensure program established by the regulations applies only to a certain subset of high-performing SUNY-authorized charter schools. Grace based her claim to standing on the fact that her child attends a SUNY-authorized charter school, but did not assert that this school is in the group affected by the regulations or, if so, has applied to be included in the licensure program. Schoenfeld and Bradley, who are certified teachers, did not show that the charter schools where they are employed are in the affected group. Thus, whether teachers licensed under the regulations will ever teach in these petitioners' schools is a matter of "conjecture and speculation" that cannot establish injury in fact (Matter of Animal Legal Defense Fund, Inc. v Aubertine, 119 AD3d at 1203; see Matter of Ellison v Stanford, 147 AD3d 1122, 1123 [2017], lv denied 29 NY3d 908 [2017]). As for the theory that the regulations may impair the economic value of the teaching certificates held by Schoenfeld and Bradley by enlarging the pool of candidates for teaching positions, neither petitioner expressed any intention to seek employment in a school affected by the regulations. Even if they did, the regulations would not deprive them of the opportunity to apply for employment, but would merely eliminate the preference that certified teachers in general now hold in obtaining teaching jobs — a form of potential harm which the Court of Appeals has held is too "tenuous and ephemeral" to constitute injury in fact (Rudder v Pataki, 93 NY2d 273, 279 [1999] [internal quotation marks and citation omitted]).
For similar reasons, the remaining petitioners in proceeding No. 2, all of which are organizations, failed to establish organizational standing. NYSUT and UFT assert that their members include teachers in public schools, charter schools and SUNY-authorized charter schools. Each union named the SUNY-authorized charter schools where their members are employed — three in the case of NYSUT and eight in the case of UFT — but did not assert that any of these schools are included in the subset of high-performing charter schools that are affected by the regulations.[FN3] The National Association for the Advancement of Colored People likewise did not show that any of its members has a child in one of the affected schools.[FN4] Thus, on this record, none of these organizations "show[ed] that at least one of [their] members would have standing to sue," and we need not examine the other elements of organizational standing (Matter of Mental Hygiene Legal Serv. v Daniels, 33 NY3d 44, 51 [2019] [internal quotation marks and citation omitted]; see New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d 207, 214 [2004]; Rudder v Pataki, 93 NY2d at 278-279; Matter of New York State Psychiatric Assn., Inc. v Mills, 29 AD3d 1058, 1059-1060 [2006], lv denied 7 NY3d 708 [2006]). Accordingly, the amended petition/complaint in proceeding No. 2 should have been dismissed.
Turning to the merits of respondents' arguments, it is a basic principle of administrative law that an agency has only "those powers expressly conferred by its authorizing statute, as well as those required by necessary implication" (Matter of City of New York v State of N.Y. Commn. on Cable Tel., 47 NY2d 89, 92 [1979]; accord Matter of Juarez v New York State Off. of Victim Servs., 169 AD3d 52, 56 [2019], lv granted 33 NY3d 914 [2019]). Education Law § 355 (2-a) authorizes the Committee, "[n]otwithstanding any other provision of law, rule, or regulation to the contrary, . . . to promulgate regulations with respect to governance, structure and operations of [SUNY-authorized] charter schools." Respondents assert that the regulations fall within this statutory authorization because teacher licensure pertains to the "operation" of SUNY-authorized charter schools. In analyzing this claim, we need not defer to the Committee's interpretation of the Education Law, as "the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent" (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980]; accord Matter of Carmel Academy v New York State Educ. Dept., 169 AD3d 1287, 1288 [2019]).
The Education Law does not define the word "operation" (see Education Law § 2). "In the absence of a statutory definition, we construe words of ordinary import with their usual and commonly understood meaning" (Yaniveth R. v LTD Realty Co., 27 NY3d 186, 192 [2016] [internal quotation marks and citations omitted]; accord Matter of Civil Serv. Empls. Assn., Inc., Local 1000, AFSCME, AFL-CIO v Olympic Regional Dev. Auth., 163 AD3d 1110, 1112 [2018]). The dictionary definition of "operation," in this context, is " performance of a practical work or of something involving the practical application of principles or processes" (Merriam-Webster Online Dictionary, operation [https://www.merriam-webster.com/dictionary/
operation]). This definition, with its emphasis on practical function, does not support respondents' interpretation. As respondents argue, the operation or "practical work" of a charter school clearly includes the hiring and supervision of teachers. However, such tasks are not the same as establishing requirements for the certification of teachers, which other public schools do not perform, and which involves policy determinations beyond a school's ordinary management and functioning. We note that the Charter Schools Act consistently uses the word "operation" to refer to the practical administration, management and supervision of individual charter schools (see e.g. Education Law §§ 2851 [1] ["For charter schools established in conjunction with a for-profit business or corporate entity, the charter shall specify the extent of the entity's participation in the management and operation of the school"], [2] [i] ["a charter school may serve fewer than fifty students or employ fewer than three teachers in the school's first year of operation"]; 2856 [1] [b] ["Amounts payable to a charter school in its first year of operation shall be based on (certain) projections."]).
We thus conclude that the inclusion of the word "operation" in Education Law § 355 (2-a) does not authorize the Committee to promulgate regulations pertaining to teacher licensure and certification. We further find that the regulations conflict with provisions of the Education Law that authorize the Commissioner to prescribe regulations governing the certification of teachers and that require most teachers in charter schools and pre-kindergartens to be certified in the same manner as other public school teachers (see Education Law §§ 2854 [3] [a-1]; 3004 [1]; 3602-ee [8]; [12]).[FN5] The Committee therefore exceeded its authority in promulgating the regulations, and Supreme Court properly annulled them and enjoined their implementation.
As the above constitutes an adequate basis for our determination, we only briefly address two other matters raised by the parties. After analyzing the guidelines first established in Boreali v Axelrod (71 NY2d 1 [1987]), we agree with Supreme Court that the regulations constituted a product of improper legislative policymaking by an administrative agency (see Matter of New York Statewide Coalition of Hispanic Chambers of Commerce v New York City Dept. of Health & Mental Hygiene, 23 NY3d 681, 698-701 [2014]; Boreali v Axelrod, 71 NY2d at 11-14; Matter of Ahmed v City of New York, 129 AD3d 435, 440 [2015]). We further agree that the SUNY respondents violated SAPA by making "substantial revision[s]" in the proposed regulations before their adoption without a notice of revised rulemaking and an opportunity for additional public comment (State Administrative Procedure Act § 102 [9]; see State Administrative Procedure Act § 202 [4-a] [a]; Siegal v New York State Div. of Hous. & Community Renewal, 143 AD2d 430, 431-433 [1988]; People v Harris Corp., 104 AD2d 130, 133-134 [1984]).
Egan Jr., Lynch and Pritzker, JJ., concur.
ORDERED that the judgment is modified, on the law, without costs, by reversing so much thereof as denied the motion to dismiss the amended petition/complaint in proceeding No. 2; motion granted to that extent and said amended petition/
complaint dismissed; and, as so modified, affirmed.



Footnotes

Footnote 1: Proceeding No. 2 was originally commenced in New York County but was joined with proceeding No. 1 and transferred to Albany County.

Footnote 2: Supreme Court made no express determination as to the capacity of petitioners in proceeding No. 1 or the standing of petitioners in proceeding No. 2, but, by granting the amended petitions/complaints, made implied determinations in their favor.

Footnote 3: Neither union asserted that it had members at SACS or the Bronx Charter School for Better Learning.

Footnote 4: The assertion that the subset of affected schools could expand in the future to include some of the schools where these petitioners have members is too speculative to establish injury in fact (see New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d 207, 214 [2004]).

Footnote 5: This conclusion is not altered by the inclusion of the phrase "[n]otwithstanding any other provision of law, rule, or regulation to the contrary" in Education Law § 355 (2-a), as the authority granted by that statute does not include the promulgation of regulations related to teacher certification.