Matter of Gronbach v New York State Educ. Dept. (2023 NY Slip Op 06182)

Matter of Gronbach v New York State Educ. Dept.

2023 NY Slip Op 06182

Decided on November 30, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 30, 2023

536063
[*1]In the Matter of Vanessa M. Gronbach et al., Appellants,
v
New York State Education Department et al., Respondents.

Calendar Date:October 11, 2023

Before:Clark, J.P., Aarons, Reynolds Fitzgerald, Fisher and McShan, JJ.

Law Office of Jeffrey J. Schiro, PLLC, Purchase (Jeffrey J. Schiro of counsel) and Gentile & Associates, New York City (Laura Gentile of counsel), for appellants.
Letitia James, Attorney General, Albany (Beezly J. Kiernan of counsel), for New York State Education Department and others, respondents.
Sylvia O. Hinds-Radix, Corporation Counsel, New York City (MacKenzie Fillow of counsel), for City School District of New York and others, respondents.

Fisher, J.
Appeal from a judgment of the Supreme Court (Susan M. Kushner, J.), entered August 23, 2022 in Albany County, which, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, granted respondents' motions to dismiss the petition/complaint.
Under the federal Individuals with Disabilities Education Act (hereinafter IDEA), all children with disabilities are entitled to "free appropriate public education that emphasizes special education and related services designed to meet their unique needs" (20 USC § 1400 [d] [1] [A]; see 20 USC § 1412 [a] [1] [A]). To deliver such education and services, states are required to develop an individualized education program (hereinafter IEP) that conforms with each disabled child's needs (see 20 USC §§ 1401 [9] [D]; 1412 [a] [4]; 1414 [d]). In New York, parents who are dissatisfied with their child's IEP can file a complaint seeking a hearing before an impartial hearing officer (hereinafter IHO) (see Education Law § 4404 [1], [2]). IHOs are trained and certified by respondent New York State Education Department (hereinafter NYSED) and may only be decertified for good cause (see Education Law § 4404 [1] [a], [c]; 8 NYCRR 200.1 [x]; 200.21 [b]). Historically, IHOs were independent contractors who are not employed on a full-time basis by either a state or local agency (see Education Law § 4404 [1] [a], [c]; 8 NYCRR 200.1 [x]).
Since 2014, New York City has received more requests for IEP hearings than any other school district in the state — consistently maintaining at least 90% of the state's hearings. This demand in the City has steadily increased, going from roughly 5,000 complaints for the 2015-2016 school year to more than 14,000 complaints for the 2020-2021 school year. A backlog of cases began to accumulate, resulting in delays for parents and their disabled children to be assigned an IHO, to participate in a hearing and to obtain a final determination within the required time period set forth by federal and state law.[FN1] Following an external review into the IHO process, a report was issued which attributed the hearing delays to various factors, including inadequate facilities, the rotational appointment process, recusals, high caseloads and other factors related to the assignment and hearing process. Based on these findings, NYSED and the New York City Department of Education (hereinafter NYCDOE) collaborated to create a plan to address the backlog by taking several measures, including hiring an additional 100 IHOs to work in the City. However, by December 2021, there was still a backlog of over 8,000 complaints awaiting assignment to an IHO.
As a result, in December 2021, representatives for NYSED, NYCDOE and respondent New York City Office of Administrative Trials and Hearings (hereinafter OATH) entered into a Memorandum of Agreement (hereinafter MOA), whereby the administrative handling of IEP complaints and hearings would be transferred to OATH, which would hire approximately [*2]40 to 50 full-time IHOs that would eventually be assigned to all of the City's cases. After a transition period, none of the IHOs under the prior independent contractor system would be assigned any cases from the City, although they would remain eligible to receive cases from elsewhere in the state. Within two weeks of the signing of the MOA, NYSED sent two notices to the existing IHOs advising them of the agreement and inviting them to apply for full-time positions at OATH.[FN2]
Shortly thereafter, the existing IHOs under the independent contractor system commenced this combined CPLR article 78 proceeding and action for declaratory judgment, alleging, among other things, that the MOA was entered into illegally and "functionally decertified" them by assigning all of the City's IEP complaints to IHOs employed by OATH. Petitioners also sought to enjoin respondents from taking any action in furtherance of the MOA, including hiring IHOs under the new system. Separately, the state and city respondents filed pre-answer motions to dismiss on the ground of lack of standing; the state respondents also moved on the ground that petitioners failed to state a cause of action. Supreme Court granted the respective motions to dismiss, finding, among other things, that petitioners lacked standing to pursue their claims under the Education Law challenging their "functional decertification." Petitioners appeal.
We affirm. "Standing is a threshold determination and a litigant must establish standing in order to seek judicial review, with the burden of establishing standing being on the party seeking review" (Matter of 61 Crown St., LLC v New York State Off. of Parks, Recreation & Historic Preserv., 207 AD3d 837, 839 [3d Dept 2022] [internal quotation marks and citations omitted]). In order "[t]o establish standing to pursue this litigation, petitioners must show that they have suffered injury-in-fact and that the injury is within the zone of interests protected by the statute at issue" (Matter of Brennan Ctr. for Justice at NYU Sch. of Law v New York State Bd. of Elections, 159 AD3d 1299, 1300 [3d Dept 2018], lv denied 32 NY3d 912 [2019]). The "critical element" is demonstrating an injury-in-fact (New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d 207, 211 [2004]), which "must be based on more than conjecture or speculation" (Matter of Animal Legal Defense Fund, Inc. v Aubertine, 119 AD3d 1202, 1203 [3d Dept 2014]). A petitioner must separately satisfy the zone of interests requirement, which "assures that groups whose interests are only marginally related to, or even inconsistent with, the purposes of the statute cannot use the courts to further their own purposes at the expense of the statutory purposes" (Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 774 [1991]).
Petitioners assert that they have suffered an injury-in-fact because they will no longer be assigned IEP complaints and hearings from the City, which comprises at least 90% of the statewide [*3]filings since 2014. As a result, petitioners claim that they have been "functionally decertified" in a manner which constitutes an improper and immediate taking of their property and liberty interests under the relevant statutory and regulatory authority. Further, petitioners contend that this amounts to more than economic harm, but also to an attack on their "decisional independence." Even accepting the allegations set forth in the petition as true and providing petitioners with the benefit of every favorable inference (see Villnave Constr. Servs., Inc. v Crossgates Mall Gen. Co. Newco, LLC, 201 AD3d 1183, 1184 [3d Dept 2022]), such conclusory allegations amount to nothing more than conjecture or speculation. As the state and city respondents contend, the record is devoid of evidence demonstrating actual harm to petitioners. Indeed, the record reveals that IHOs have historically been independent contractors and are not entitled to any promised minimum number of assignments or amount of annual compensation. Although it is true that the City constitutes the bulk of the IEP complaints and hearings throughout the state, petitioners were invited to apply for full-time IHO positions with OATH and may still receive hearings from elsewhere in the state (see Matter of New York State Bd. of Regents v State Univ. of N.Y., 178 AD3d 11, 18 [3d Dept 2019], lv denied 35 NY3d 912 [2020]).[FN3] This Court has rejected the notion that spreading the volume of service requests to additional providers outside the geographic area of a petitioner constitutes a specific harm where there was no public need inquiry — unlike here, where the record does contain a thorough external report on the need to resolve the backlog of IEP complaints, including cumulative findings from federal, state and local entities (see Matter of Parkland Ambulance Serv. v New York State Dept. of Health, 261 AD2d 770, 772 [3d Dept 1999], lv denied 93 NY2d 818 [1999]).There is also no concrete evidence demonstrating that the MOA and corresponding regulations will diminish the quality of IEP hearings and determinations, or otherwise affect petitioners' "decisional independence" or the propriety of their determinations (see Matter of New York State Psychiatric Assn., Inc. v Mills, 29 AD3d 1058, 1059 [3d Dept 2006], lv denied 7 NY3d 708 [2006]). Nor do the MOA and relevant regulatory amendments result in an outcome contrary to specific legal obligations or rights of others, or the contractual obligations of petitioners to others (compare Matter of Lawyers for Children v New York State Off. of Children & Family Servs., 218 AD3d 913, 915 [3d Dept 2023]). Accordingly, petitioners' asserted injuries are conjecture and too speculative to satisfy the injury-in-fact requirement (see New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d at 211-213; see also Matter of Gym Door Repairs, Inc. v New York City Dept. of Educ., 112 AD3d 1198, 1199 [3d Dept 2013]; Matter of New York State Psychiatric Assn., Inc. [*4]v Mills, 29 AD3d at 1059-1060; Matter of Parkland Ambulance Serv. v New York State Dept. of Health, 261 AD2d at 772).
Even if a sufficient injury-in-fact was asserted, petitioners also failed to demonstrate that they were within the zone of interests sought to be protected by the relevant statute and regulations. One of the stated findings behind IDEA was that "it is in the national interest . . . to educate children with disabilities in order to improve results for such children and to ensure equal protection of the law" (20 USC § 1400 [c] [6]). The stated purposes for IDEA revolve around ensuring that all children with disabilities have available to them free appropriate public education and that the rights of these children and their parents are protected (see 20 USC § 1400 [d]). These stated purposes surrounding IDEA are echoed in the legislative history repealing and replacing article 89 of the Education Law, which notably did not originally include any provision establishing IHOs (see L 1976, ch 853, § 3). Indeed, the intended beneficiaries of article 89 of the Education Law and the corresponding regulations are unassailably disabled children and their parents — not those professionals carrying out a part of the process in ensuring free appropriate public education to such disabled children and their parents (see also Matter of Gym Door Repairs, Inc. v New York City Dept. of Educ., 112 AD3d at 1200; Matter of New York State Psychiatric Assn., Inc. v Mills, 29 AD3d at 1060; Matter of Lasalle Ambulance v New York State Dept. of Health, 245 AD2d 724, 725 [3d Dept 1997], lv denied 91 NY2d 810 [1998]). To that end, petitioners have not identified "any statutory or constitutional provision intended to prevent economic injury resulting from decreased employment opportunities" (Rudder v Pataki, 93 NY2d 273, 279 [1999]; see New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d at 214). As further noted by respondents at oral argument, this outcome also does not shield the MOA and respondents' actions from judicial review, as disabled children or their parents may raise a similar challenge to the "decisional independence" of an IHO after an adverse decision (see generally Matter of Lawyers for Children v New York State Off. of Children & Family Servs., 218 AD3d at 914-915). Accordingly, Supreme Court properly granted the city and state respondents' respective motions to dismiss the petition due to a lack of standing. We have considered the remaining contentions of the parties and have found them to be without merit or rendered academic.
Clark, J.P., Aarons, Reynolds Fitzgerald and McShan, JJ., concur.
ORDERED that the judgment is affirmed, without costs.

Footnotes

Footnote 1: Such delays have resulted in litigation against NYSED for allegedly failing to assign IHOs in a timely manner. Separately, an external report issued to NYSED contained a determination by the US Office of Special Education Programs that the State was "not exercising its general supervisory responsibility to ensure that IHOs adhere to the 45-day timeline for issuing final decisions in due process hearings" (brackets omitted).

Footnote 2: Although IHO applicants were initially required to be residents of the City, this residency requirement was later waived by the City.

Footnote 3: During oral argument before Supreme Court, when discussing the lack of an actual harm, counsel for petitioners acknowledged that this matter was "not a mere economic issue" but involved the devaluing of petitioners' certificates and their decisional independence.