OPINION OF THE COURT
Chief Judge Breitel.
These two appeals share a common quality: in each the plaintiffs would embroil the courts in the administration of programs the primary responsibility for which lies in the executive branch of government. In each the courts are obliged to decline the invitation. Accepting the responsibility would violate the constitutional scheme for the distribution of powers among the three branches of government and involve the judicial branch in responsibilities it is ill-equipped to assume.
In the Jones appeal plaintiffs are private persons and organizations concerned with the inadequate, and therefore cruel, treatment of animals, as a result of fiscal crisis, in municipal zoos in the City of New York in violation of applicable statutes. They seek declaratory and injunctive relief against the municipal officials charged with ultimate responsibility for operation of the zoos. As the appeal reaches this court, all of the causes of action in the amended complaint have been dismissed on motion either for legal insufficiency or lack of standing (see CPLR 3211, subd [a]).
In the Bowen appeal plaintiffs, the City of Long Beach and its city manager, are concerned with the premature placement in private homes and hotels of mental patients discharged into the community in violation of applicable law. They seek declaratory and injunctive relief against the State departments charged with responsibility for the care and treatment of the mentally ill on the assertions that the patients, while still mentally ill, were discharged into the community in excessive numbers and without adequate supervision. As the appeal reaches this court, the complaint has been sustained on motion as legally sufficient (see CPLR 3211, subd [a]).
In the Jones appeal the amended complaint should stand dismissed, and in the Bowen appeal the order should be reversed and the complaint dismissed. In both cases the allegations of fact are accepted as true. Indeed, many of the disturbing and even dreadful conditions to which they refer *407 are matters of common knowledge. Nevertheless, as this court pointed out so recently in Matter of Abrams v New York City Tr. Auth. (39 NY2d 990, 992), plaintiffs, however sincerely motivated, may not interpose themselves and the courts into "the management and operation of public enterprises”. Involved are, as in the Abrams case, "questions of judgment, discretion, allocation of resources and priorities inappropriate for resolution in the judicial arena”, the responsibility for which is "lodged in a network of executive officials, administrative agencies and local legislative bodies.” The court spoke again to the same effect in James v Board of Educ. (42 NY2d 357, 368). (See, also, Matter of Community Action Against Lead Poisoning v Lyons, 43 AD2d 201, 202-203, affd on opn below 36 NY2d 686.)
In the Jones case, involving the zoos, the City of New York, in prolonged fiscal crisis, threatened with bankruptcy, dependent on State and Federal fiscal assistance, and constrained by close regulation, has curtailed services and personnel in efforts to achieve a balanced budget. Its choices have been hard and the measures taken often Draconian, not only at the expense of its animal charges but also of its children in the schools, its poor, its highways and transportation, its courts, jails, hospitals, museums, libraries, police and fire services, and indeed of its whole range of municipal services. Obviously, it is untenable that the judicial process, at the instance of particular persons and groups affected by or concerned with the inevitable consequences of the city’s fiscal condition, should intervene and reorder priorities, allocate the limited resources available, and in effect direct how the vast municipal enterprise should conduct its affairs.
In the Bowen case, involving the "dumping” on communities of mentally ill patients, the complexities relate not to fiscal measures alone, but to theories and programs for deinstitutionalizing, for the sake of the patients, the inmates of the crowded and evermore crowding mental hospitals. In the State too there are fiscal problems, although not as grave as those affecting the City of New York. The State’s fiscal problem is not necessarily solvable by increased taxation because of the fear that it would accelerate the removal of taxpayers and enterprise from the State. Thus, there may be no easy answer in allocating the State’s tax-created resources to assist the fiscally troubled City of Long Beach in handling the problems created by the influx of mental patients. Even more intracta *408 ble are the conflicting views as to the better therapy for mental patients, that is, whether to treat them in institutions or in private settings in the community.
Hence, inescapably, in both cases there are questions of broad legislative and administrative policy beyond the scope of judicial correction. Not only is the situs of responsibility elsewhere, but the judicial process is not designed or intended to assume the management and operation of the executive enterprise.
These principles are not new. Seventy-five years ago Mr. Justice William S. Andrews, later a distinguished Judge of this court, stated in a somewhat different but parallel context:
"The interference of the Supreme Court with the details of municipal administration is not to be encouraged. These details are intrusted by the people to officers chosen directly or indirectly by themselves. These officers are criminally responsible for a willful neglect of their duties, and upon them the responsibility for the government of our cities should usually be allowed to rest.
"The Supreme Court is not so organized as to enable it-conveniently to assume a general supervisory power over their acts; and indeed such an assumption by it would be contrary to the whole spirit and intent of our government” (People ex rel. Clapp v Listman, 40 Misc 372, 375-376, affd on opn below 84 App Div 633).
The problem of judicially manageable questions is usually described as one of justiciability, not just one of standing. Although much has been written on justiciability, its meaning and application remain uncertain (see Flast v Cohen, 392 US 83, 95; see, also, Borchard, Declaratory Judgments [2d ed], pp 33-40). For example, considered as nonjusticiable, that is, inappropriate or sometimes even improper for judicial inquiry or adjudication, have been political questions, issues that have become moot, and challenges in which only an advisory opinion is sought (see, e.g., Flast v Cohen, 392 US 83, 95, supra). Even within a particular category of justiciability, as with political questions, the line separating the justiciable from the nonjusticiable has been subtle, and with the passage of time, it might be said, has even moved (see, e.g., Baker v Carr, 369 US 186, 208-237).
There is one recurrent theme: the court as a policy matter, even apart from principles of subject matter jurisdic *409 tion, will abstain from venturing into areas if it is ill-equipped to undertake the responsibility and other branches of government are far more suited to the task. As put by the then Chief Judge Wyzanski, speaking with respect to a political question, abstention was "a recognition that the tools with which a court can work, the data which it can fairly appraise, [and] the conclusions which it can reach as a basis for entering judgments, have limits” (United States v Sisson, 294 F Supp 511, 515).
In the instant cases much effort was expended in detailing the concern of the plaintiffs with the issues presented, avowedly to. demonstrate that if anyone has standing to litigate these issues, plaintiffs do. In this, plaintiffs are probably correct. The difficulty is not, however, whether plaintiffs are the wrong ones to present and litigate the issues; the point is that the courts are the wrong forum for resolution of the disputes. The proper forums are the Legislature and the elected officials of State and local government.* It is there that the accommodations can be made in determining priorities and allocating resources.
In short, resolution of the ultimate issues rests on policy, and reference to violations of applicable statutes is irrelevant except in recognized separately litigable matters brought to enforce them. Mr. Justice Andrews, in People ex rel. Clapp v Listman (40 Misc 372, supra) made the point graphically. One may initiate a criminal complaint against a malefactor for a particular act, or administratively charge a police officer for failing to do his duty to arrest and charge, but rarely, if ever, should mandamus lie to command the Commissioner of Public Safety to enforce the Sunday "blue” laws or the ordinance forbidding the riding of bicycles on the sidewalk (id., at pp 374-376).
Accordingly, in the Jones appeal the order should be affirmed, without costs, and in the Bowen appeal the order should be reversed, without costs, and the motion to dismiss the complaint granted.
*410 Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
In Jones v Beame: Order affirmed, without costs.
In Bowen v State Bd. of Social Welfare: Order reversed, without costs, and the motion to dismiss the complaint granted. Question certified answered in the negative.

 See the Laws of 1978 (ch 468, generally eff Sept. 1, 1978) which adds a new section to the Mental Hygiene Law. The statute not only promotes the establishment of community residences for the mentally ill, but also insures formal participation by the community in selection of a site so as "to best protect the interests of the mentally disabled” and "to avoid, wherever practicable, a disproportionate distribution of community residences” (declaration of legislative findings and intent).