NEW YORK STATE INSPECTION, SECURITY AND LAW ENFORCE-
MENT EMPLOYEES, DISTRICT COUNCIL 82, AFSCME,
AFL-CIO, et al., Respondents, v MARIO M. CUOMO, as
Governor and Chief Executive Officer of the State of
New York, et al., Appellants.

Second Department, September 21, 1984

### APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General* (*Ann Horowitz* of
counsel), for appellants.

*Rowley, Forrest & O'Donnell, P. C.* (*Mark T. Walsh, Jr.,*
of counsel), for respondents.

### OPINION OF THE COURT

*Per Curiam.*

These appeals concern the scheduled October 1, 1984
closing of the Long Island Correctional Facility (hereinaf-

ter LICF) which has been in operation since July, 1982 and which is located in the Pilgrim Psychiatric Center. The facility was opened as part of the conversion plan announced by former Governor Carey to meet the immediate and long-term population needs of the correction system. When the decision to partially convert the Pilgrim Psychiatric Center for correctional use was originally announced, the County of Suffolk and others commenced a proceeding seeking to set aside that decision on the ground, *inter alia,* that the appellants therein acted in violation of the State Environmental Quality Review Act (hereinafter SEQRA, ECL art 8) by failing to properly consider the potential impact of the proposed action on the surrounding community and the immediate patient community. Special Term granted the petitioners' motion for a preliminary injunction enjoining the opening of the facility. However, on appeal, this court reversed and denied the motion (*Matter of Cohalan v Carey,* 88 AD2d 77). This court concluded that the appellants therein had complied with the requirements of SEQRA and that the appellants' determination that the partial conversion of the Pilgrim Psychiatric Center for correctional use would not have a significant impact on the environment of the surrounding community was not arbitrary and capricious. Accordingly, this court held that the petitioners failed to establish a likelihood of success on the merits and were not entitled to injunctive relief. The petitioners' subsequent appeal to the Court of Appeals was dismissed (*Matter of Cohalan v Carey,* 57 NY2d 672). Shortly thereafter, the LICF was opened.

In January, 1984, in his annual message to the Legislature, Governor Cuomo announced that the LICF would be closed as part of the over-all capital expansion plan of the New York State Department of Correctional Services (hereinafter DOCS). In a subsequent press release dated February 16, 1984, Governor Cuomo announced that the facility would be closed on October 1, 1984. The Governor stated further that "[w]ith the opening of 3,500 new prison spaces over the next year under the State's prison expansion program and a current reading of prison population growth projections, the State will be able to absorb the 700 Brentwood inmates by October 1".

Petitioners instituted the instant proceeding by service of a notice of petition, dated April 27, 1984, seeking to

enjoin the scheduled closing of the LICF. There are two classes of petitioners. Class I includes those correction officers, sergeants, lieutenants and civilian employees of the DOCS currently employed at the LICF. Class II includes all those correction officers, sergeants and lieutenants employed at the Sing Sing Correctional Facility at Ossining, New York, and other correctional facilities maintained and operated by the DOCS. In the petition, petitioners assert the following seven causes of action:

### FIRST CAUSE OF ACTION

Petitioners allege that the closing of the LICF will violate their statutory rights under section 27-a of the Labor Law.

### SECOND CAUSE OF ACTION

Petitioners allege that the decision to close the LICF does not rest upon any legitimate State purpose and is thus illegal, arbitrary and capricious.

### THIRD CAUSE OF ACTION

Petitioners allege that Governor Cuomo is acting in excess of his constitutional and statutory authority by ordering the closing of the LICF.

### FOURTH CAUSE OF ACTION

Petitioners allege that Governor Cuomo is usurping the powers, rights and duties of the Commissioner of Correctional Services, by ordering the closing of the LICF.

### FIFTH CAUSE OF ACTION

Petitioners allege that the Commissioner of Correctional Services is proceeding in excess of his jurisdiction in allowing the LICF to close by order of Governor Cuomo.

### SIXTH CAUSE OF ACTION

Petitioners allege that by closing the LICF, the appellants have failed to perform a duty which is enjoined upon them by law to use the resources of the DOCS to provide the maximum services and facilities provided by law.

### SEVENTH CAUSE OF ACTION

Petitioners allege that the appellants are equitably estopped from closing the LICF and interfering with the employment status of the class I petitioners.

Petitioners moved for a preliminary injunction enjoining the closing of the LICF pending a determination on the merits. On June 5, 1984, Special Term granted petitioners' motion for a preliminary injunction. On that date the appellants moved to dismiss the petition pursuant to CPLR 7804 (subd [f]) and CPLR 3211 (subd [a], pars 2, 7) upon the grounds (a) that the decision to close the LICF involves the exercise of executive discretion and therefore presents a controversy that is nonjusticiable, (b) that petitioners have failed to exhaust their contractual remedies, (c) that the petition fails to state a cause of action, and (d) that petitioners lack standing. Special Term denied the appellants' motion to dismiss, finding, *inter alia,* that the claim advanced by petitioners under section 27-a of the Labor Law was justiciable in light of the recent Court of Appeals decision in the cases of *Klostermann v Cuomo* and *Joanne S. v Carey* (61 NY2d 525). We disagree.

It is fundamental that the judiciary is loath to interfere with the executive branch of government with respect to the administration and management of its affairs, the allocation of its resources and the implementation and management of its various programs. This general principle was discussed by the Court of Appeals in its joint opinion in the cases of *Jones v Beame* and *Bowen v State Bd. of Social Welfare* (45 NY2d 402), which, while arising from different facts and different programs, raised the same issue of justiciability. In *Jones* (*supra*), the plaintiffs, who were private persons and organizations concerned with the inadequate and therefore cruel treatment of animals in the New York City zoos as a result of the city's fiscal crisis, sought declaratory and injunctive relief against the municipal officials charged with the ultimate responsibility for operation of the zoos. In *Bowen* (*supra*) the plaintiffs, the City of Long Beach and its City Manager, were concerned with the premature placement in private homes and hotels of mental patients discharged into the community. The plaintiffs accordingly sought injunctive and declaratory relief against the State departments charged with the ultimate responsibility for the care and treatment of the mentally ill.

With respect to the *Jones* case, the Court of Appeals noted that: "[o]bviously, it is untenable that the judicial process, at the instance of particular persons and groups

affected by or concerned with the inevitable consequences of the city's fiscal condition, should intervene and reorder priorities, allocate the limited resources available, and in effect direct how the vast municipal enterprise should conduct its affairs" (45 NY2d 402, 407, *supra*). Similarly with respect to *Bowen,* the court stated, "the complexities relate not to fiscal measures alone, but to theories and programs for deinstitutionalizing, for the sake of the patients, the inmates of the crowded and evermore crowding mental hospitals" (45 NY2d 402, 407, *supra*). In conclusion the Court of Appeals noted that "resolution of the ultimate issues rests on policy, and reference to violations of applicable statutes is irrelevant except in recognized separately litigable matters brought to enforce them" (45 NY2d 402, 409, *supra*).

The instant proceeding is similar to the *Jones* and *Bowen* cases (*supra*) in that the relief sought by petitioners herein, i.e., the enjoining of the closing of the LICF, necessarily requires the judiciary to become involved in the operation and administration of the executive department and the DOCS. The primary responsibility for administering the State correctional system is vested in the Commissioner of Correctional Services (Correction Law, § 112) who is appointed by and holds office at the pleasure of the Governor (Correction Law, § 5). The Commissioner is also specifically vested with the responsibility, to be discharged within his discretion, of maintaining, establishing, adding to or closing any correctional facility operated by the DOCS in accordance with the needs of the Department (Correction Law, § 70, subd 3, par [a]). In this case, Commissioner Coughlin, in agreement with Governor Cuomo, has determined that the closing of the LICF is appropriate in light of the fact that it was opened without adequate opportunity for community participation in the planning process. Commissioner Coughlin has also indicated that the decision to close the LICF is part of an over-all capital expansion program which includes the addition of new correctional facility space to the system and the phasing out of specifically identified facility space as new space becomes available. Clearly, it is not within the scope of the judicial power to question the wisdom of this administrative decision. As the Court of Appeals stated in the *Jones*

and *Bowen* cases (45 NY2d 402, 408, *supra*), "the judicial process is not designed or intended to assume the management and operation of the executive enterprise".

Petitioners, relying on the recent Court of Appeals cases of *Klostermann v Cuomo* and *Joanne S. v Carey* (61 NY2d 525, *supra*), argue that this proceeding is justiciable on the basis that they are asserting their statutory rights to a safe work environment under subdivision 3 of section 27-a of the Labor Law. That subdivision states, *inter alia,* that every employer "shall * * * furnish to each of its employees, employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to its employees and which will provide reasonable and adequate protection to the lives, safety or health of its employees". Petitioners essentially claim that the closing of the LICF will exacerbate the overcrowded conditions currently existing in the State correctional system and will thus cause unsafe and dangerous working conditions for petitioners. While petitioners' concern over the safety of the conditions of the State's correctional facilities is understandable, we do not find that the decision in the *Klostermann* and *Joanne S.* cases (61 NY2d 525, *supra*) supports a conclusion that the instant proceeding is justiciable.

The *Klostermann* and *Joanne S.* cases involved two separate actions instituted by persons treated for mental illness in State institutions claiming that their constitutional and statutory rights have been violated by the various defendants. The plaintiffs in the first action were comprised of several individuals who were treated in a State psychiatric hospital and discharged as part of the State's policy to release patients to less restrictive, community based residences. When released, each of these patients apparently "became one of the homeless wandering the streets of New York City" (61 NY2d 525, 531, *supra*) and their efforts to receive assistance from municipal agencies were fruitless. The plaintiffs in the second action were individuals who had been found ready to return to the community but had not been discharged and released because of the lack of adequate residential placements. In both actions, the plaintiffs were seeking to enforce their

rights under subdivisions (f) through (h) of section 29.15 of the Mental Hygiene Law, which prescribe certain acts which must be taken when a patient is released from a psychiatric institution. Those subdivisions essentially require that a written service plan be drawn up for each patient before his release which sets forth the type of residence in which the patient should live, the list of services available at the residence as well as organizations and facilities available to the patient. In addition, the director of the facility is required to implement and monitor a plan to ensure that the patient is placed in an adequate facility and is receiving the necessary services.

In each case, the defendants moved to dismiss the complaint on the basis that the controversy was nonjusticiable. Special Term dismissed the complaints and the Appellate Division, First Department, affirmed (*Klostermann v Carey,* 91 AD2d 593; *Joanne S. v Carey,* 94 AD2d 691). The Court of Appeals, deciding the two appeals together, reversed and denied the defendants' motions to dismiss the complaints. At the outset, the Court of Appeals reiterated and reaffirmed the basic principle of nonjusticiability (61 NY2d 525, 535-536, *supra*): "The paramount concern is that the judiciary not undertake tasks that the other branches are better suited to perform. Acquiring data and applying expert advice to formulate broad programs cannot be economically done by the courts. This restraint is particularly important when the creation of a program entails selecting among competing and equally meritorious approaches so as to allocate scarce resources. Generally, the manner by which the State addresses complex societal and governmental issues is a subject left to the discretion of the legislative and executive branches of our tripartite system (see *Matter of Abrams v New York City Tr. Auth.,* 39 NY2d 990, 992)."

The Court of Appeals noted, however, that the defendants' claims that the two cases before it presented nonjusticiable issues were without merit in that the defendants had "fail[ed] to distinguish between a court's imposition of its own policy determination upon its governmental partners and its mere declaration and enforcement of the individual's rights that have already been conferred by the

other branches of government" (61 NY2d 525, 535, *supra*). The court stated further:

"Plaintiffs are individuals who claim that they hold certain rights under the pertinent statutes and are seeking to enforce those rights. In effect, they assert that the Legislature has mandated certain programs and that the executive branch has failed to deliver the services. The appropriate forum to determine the respective rights and obligations of the parties is in the judicial branch * * *

"In sum, there is nothing inherent in plaintiffs' attempts to seek a declaration and enforcement of their rights that renders the controversy nonjusticiable. They do not wish to controvert the wisdom of any program. Instead, they ask only that the program be effected in the manner that it was legislated" (61 NY2d 525, 536-537, *supra*).

In the instant proceeding, as discussed previously, petitioners attempt to draw a parallel to the *Klostermann* and *Joanne S.* cases (*supra*), by arguing that they are enforcing their statutory rights under section 27-a (subd 3, par a, cl [1]) of the Labor Law. We find *Klostermann* and *Joanne S.* (*supra*), to be distinguishable since in those cases the plaintiffs were seeking to enforce a very specific statutory right pursuant to a specific legislatively mandated program. Thus, the Court of Appeals in *Klostermann* and *Joanne S.* was not becoming involved in administrative or executive decisions or directing the municipal agencies how to appropriate their funds, but rather, the court was enforcing a program which the Legislature had already established. In the instant proceeding, however, petitioners are seeking to enforce a generalized statutory right, i.e., the right to safe working conditions, which necessarily requires the judiciary to involve itself in the decision-making process of the executive branch. That branch of our State government has already reviewed the situation and determined that the closing of the LICF would not cause problems in the existing correctional system and is an element of the DOCS' over-all capital expansion plan. If the judiciary were to become involved in this controversy, it would in essence be directing the DOCS how to appropriate its funds, which correctional facilities it should keep open and which to close and how the DOCS should operate

and maintain the correctional system. Accordingly, we find that the decision to close the LICF is nonjusticiable.

We also find petitioners' claims in the nature of mandamus and prohibition to be without merit. Prohibition is an extraordinary remedy and is available only if the body or officer "is proceeding or is about to proceed without or in excess of jurisdiction" (CPLR 7803, subd 2). That remedy may not be employed to control legislative, executive or administrative acts (*Matter of Nicholson v State Comm. on Judicial Conduct,* 50 NY2d 597, 606). Commissioner Coughlin has ordered the closing of the LICF by virtue of the authority granted to him by section 70 of the Correction Law. Accordingly, the Commissioner is acting within his jurisdiction and the remedy of prohibition does not lie. Similarly, the claim that the Commissioner is acting in excess of his jurisdiction by closing the LICF at the behest of the Governor, is without merit since the Governor is the chief executive officer of the State and the Commissioner of Correctional Services exercises his authority and discretion by virtue of his appointment by the Governor (Correction Law, § 5). Moreover, the remedy of mandamus may only be utilized to compel the performance of a purely ministerial act which involves no exercise of judgment or discretion (*Matter of Legal Aid Soc. v Scheinman,* 53 NY2d 12, 16; Siegel, NY Prac, § 558, p 776). Since the continued operation of the LICF is not a purely ministerial act, the remedy of mandamus is not available.

Finally, petitioners' equitable estoppel claim must fall since, as a general rule, the doctrine of estoppel is not applicable to the State acting in a governmental capacity (*Matter of Hamptons Hosp. & Med. Center v Moore,* 52 NY2d 88, 93-94). Petitioners have failed to set forth any basis in law for an entitlement to the continued existence of civil service employment at a particular facility (see *Matter of Vasquez v Town Bd.,* 72 AD2d 883).

Accordingly, the order dated June 5, 1984 should be reversed, on the law, without costs or disbursements, the petitioners' motion for a preliminary injunction should be denied and the preliminary injunction should be vacated. The order dated July 9, 1984 should be reversed, on the law, without costs or disbursements, the appellants' mo-

tion to dismiss the petition should be granted and the petition should be dismissed.

MANGANO, J. P., GIBBONS, BRACKEN and NIEHOFF, JJ., concur.

Order of the Supreme Court, Suffolk County, dated June 5, 1984, reversed, on the law, without costs or disbursements, motion for a preliminary injunction denied and preliminary injunction vacated.

Order of the same court, dated July 9, 1984, reversed, on the law, without costs or disbursements, motion to dismiss the petition granted and petition dismissed.