Matter of Brennan Ctr. for Justice At NYU Sch. of Law v New York State Bd. of Elections (2018 NY Slip Op 02228)





Matter of Brennan Ctr. for Justice At NYU Sch. of Law v New York State Bd. of Elections


2018 NY Slip Op 02228


Decided on March 29, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 29, 2018

524950

[*1]In the Matter of BRENNAN CENTER FOR JUSTICE AT NYU SCHOOL OF LAW et al., Appellants,
v NEW YORK STATE BOARD OF ELECTIONS, Respondent.

Calendar Date: January 12, 2018

Before: Garry, P.J., McCarthy, Egan Jr., Lynch and Pritzker, JJ.


Emery Celli Brincherhoff & Abady LLP, New York City (Elizabeth S. Saylor of counsel) and Wendy R. Weiser, Brennan Center for Justice at NYU School of Law, New York City, for appellants.
William J. McCann Jr., New York State Board of Elections, Albany, for respondent.


Garry, P.J.

MEMORANDUM AND ORDER
Appeal from a judgment of the Supreme Court (Ferreira, J.), entered March 3, 2017 in Albany County, which dismissed petitioners' application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to review a determination of respondent denying a request to rescind and replace respondent's 1996 Opinion No. 1.
Respondent is a bipartisan agency governed by four appointed commissioners and vested with the statutory authority to issue instructions, rules and regulations pertaining to campaign financing practices, among other things (see Election Law §§ 3-100 [1]; 3-102 [1]). When the creation of limited liability companies (hereinafter LLCs) was first statutorily authorized in New York in 1994, the Legislature did not amend the Election Law to establish campaign contribution limits for the new entities like those that had already been established for partnerships and corporations. Respondent thereafter resolved the question of the applicable limits by issuing 1996 Opinion No. 1 (hereinafter the 1996 opinion), which opined that treatment of an LLC as a corporation or a partnership was precluded by the statutory definition of an LLC as "an unincorporated organization . . . other than a partnership or trust" (Limited Liability Company Law § 102 [m] [emphasis added]). Respondent determined that LLCs should be treated as persons for this purpose and were thus subject to the contribution limits that apply to [*2]individuals under Election Law article 14.
As the statutory contribution limits imposed upon partnerships and corporations are lower than those imposed upon individuals, the 1996 opinion permits LLCs to make significantly larger political contributions than those allowed for other business entities — a controversial result known as the "LLC Loophole." Critics assert that LLCs have acquired disproportionate political influence that has significantly impaired the quality and integrity of governance. Legislative efforts since 1996 to close the LLC Loophole and impose lower contribution limits upon LLCs have not succeeded.
In April 2015, one of respondent's commissioners made a motion for respondent to direct its counsel to prepare an opinion that would rescind the 1996 opinion and provide updated guidance on the applicability of the Election Law's contribution limits to LLCs. The motion failed when two of the four commissioners voted against it (see Election Law § 3-100 [1], [4]). Petitioner Brennan Center for Justice at NYU School of Law and six individuals sought review in a combined CPLR article 78 proceeding and action for a declaratory judgment. Supreme Court (Fisher, J.) dismissed the petition/complaint in its entirety and, upon appeal, this Court affirms said dismissal (Matter of Brennan Law Ctr. for Justice at NYU School of Law v New York State Bd. of Elections, ___ AD3d ___ [appeal No. 524905, decided herewith]).
In April 2016, one of respondent's commissioners put forth a new motion seeking the approval of a proposed draft opinion that would rescind and replace the 1996 opinion and find that LLCs should be treated as partnerships or corporations under the Election Law. As before, the motion failed when two commissioners voted against it. Petitioners commenced this combined CPLR article 78 proceeding and action for a declaratory judgment seeking, among other things, a judgment invalidating respondent's April 2016 decision and adopting the proposed opinion. Supreme Court (Ferreira, J.) dismissed the petition/complaint, determining that the matter presents a nonjusticiable political question, among other things. Petitioners appeal.
The general principle of justiciability embraces several concepts — including standing and the nonjusticiability of political questions, among others — that are related by the fundamental tenet that, in our tripartite system of government, a court should limit itself to conflicts that are amenable to traditional judicial resolution and should "not undertake tasks that the other [governmental] branches are better suited to perform" (Klostermann v Cuomo, 61 NY2d 525, 535 [1984]; see Jones v Beame, 45 NY2d 402, 408 [1978]; Roberts v Health & Hosps. Corp., 87 AD3d 311, 323 [2011], lv denied 17 NY3d 717 [2011]; see also Flast v Cohen, 392 US 83, 95 [1968]). This matter raises interrelated issues of justiciability as to whether a court is the appropriate forum for the determination of petitioners' contentions. Despite the importance of the underlying issues, we agree with Supreme Court that this matter is not justiciable. We reach this conclusion both because petitioners lack standing and for the closely-related, and more significant, reason that the issues they raise are nonjusticiable political questions.
Essentially, petitioners ask this Court to direct respondent to rescind its 1996 opinion on the LLC Loophole and replace it with one that would provide what they assert to be a superior application of public policy. We may not grant this request without violating the vital principle of the separation of powers. That principle dictates that each branch of government "should be free from interference, in the lawful discharge of duties expressly conferred, by either of the other branches" (Matter of New York State Inspection, Sec. & Law Enforcement Empls., Dist. Council 82, AFSCME, AFL-CIO v Cuomo, 64 NY2d 233, 239 [1984]; accord Roberts v Health & Hosps. [*3]Corp., 87 AD3d at 324). Here, the Legislature has conferred the authority to make directions pertaining to campaign financing practices upon respondent (see Election Law § 3-102 [1]). This Court cannot disturb respondent's lawful directions with regard to LLCs without interfering with "policy-making and discretionary decisions that are reserved to the legislative and executive branches" (Klostermann v Cuomo, 61 NY2d at 541; accord Campaign for Fiscal Equity, Inc. v State of New York, 8 NY3d 14, 28 [2006])[FN1]. The important issues raised here involve matters of discretion and policy that have been expressly entrusted to another branch of government and are "beyond the scope of judicial correction" (Jones v Beame, 45 NY2d at 408; see Matter of New York State Inspection, Sec. & Law Enforcement Empls., Dist. Council 82, AFSCME, AFL-CIO v Cuomo, 64 NY2d at 239-240; Klostermann v Cuomo, 61 NY2d at 535; Matter of Schulz v Silver, 212 AD2d 293, 295 [1995], appeal dismissed 86 NY2d 835 [1995], lv dismissed and denied 87 NY2d 916 [1996].[FN2]
The nonjusticiable nature of this controversy is closely interconnected with the question of petitioners' standing to pursue this matter — "an aspect of justiciability which, when challenged, must be considered at the outset of any litigation" (Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 769 [1991]). To establish standing, petitioners must show that they have suffered an injury-in-fact and that the injury is within the zone of interests protected by the statute at issue (see Matter of Association for a Better Long Is., Inc. v New York State Dept. of Envtl. Conservation, 23 NY3d 1, 6 [2014]). Here, the dispute focuses upon the injury-in-fact element, which requires petitioners to establish that they have suffered or will suffer concrete harm that is "distinct from that of the general public" (Matter of Transactive Corp. v New York State Dept. of Social Servs., 92 NY2d 579, 587 [1998]; see Matter of Graziano v County of Albany, 3 NY3d 475, 482 [2004]; Schulz v Cuomo, 133 AD3d 945, 947 [2015], appeal dismissed 26 NY3d 1139 [2016], lv denied 27 NY3d 907 [2016]).
The six individual petitioners are current or former legislators or candidates for legislative office, and the Brennan Center describes itself as "a not-for-profit, non-partisan public policy and law institute that focuses on issues of democracy and justice." Petitioners contend persuasively that the detrimental political influence enjoyed by LLCs presents serious issues of "vital public concern," but — by the application of binding precedent — this fact alone does not establish standing (Society of Plastics Indus. v County of Suffolk, 77 NY2d at 769 [internal quotation marks omitted]). The individual petitioners claim that the LLC Loophole hampers their electoral campaigns by placing them at a competitive disadvantage against opponents who receive larger contributions, damages their ability to represent their constituents, and harms them [*4]as voters and citizens by, among other things, limiting their choices among candidates and hiding the identity of donors. These claimed injuries as voters and citizens are common to all community members, and the political injuries are likewise common to all candidates, who are equally free to seek or reject LLC contributions under the 1996 opinion. Thus, the individual petitioners' injuries are not "different or distinct from [those] of the public at large" (Schulz v Cuomo, 133 AD3d at 947; see Matter of Transactive Corp. v New York State Dept. of Social Servs., 92 NY2d at 587; Lancaster Dev., Inc. v McDonald, 112 AD3d 1260, 1261-1262 [2013], lv denied 22 NY3d 866 [2014]; Matter of Diederich v St. Lawrence, 78 AD3d 1290, 1291-1292 [2010], lv dismissed and appeal dismissed 17 NY3d 782 [2011]).
Certain individual petitioners assert that they may suffer competitive disadvantages in future electoral campaigns as a result of the LLC Loophole. This injury is conjectural and, therefore, does not operate to establish standing (see New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d 207, 214-215 [2004]; Schulz v Cuomo, 133 AD3d at 947; Matter of Town of E. Hampton v State of New York, 263 AD2d 94, 96 [1999])[FN3]. Nor has the Brennan Center established organizational standing (see generally Matter of Dental Socy. of State of N.Y. v Carey, 61 NY2d 330, 333-334 [1984]). Its assertion that the LLC Loophole harms its staff contributors and volunteers by limiting their candidate choices and unduly influencing their political representatives does not allege harm that differs from that suffered by the general public and, thus, does not establish "that at least one of its members would have standing to sue" (New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d at 211; see Rudder v Pataki, 93 NY2d 273, 278-280 [1999]; Matter of Citizens Emergency Comm. to Preserve Preserv. v Tierney, 70 AD3d 576, 576-577 [2010], lv denied 15 NY3d 710 [2010])[FN4]. We find no merit in the Brennan Center's further claim that it was injured by having to expend resources to promote the closure of the LLC Loophole (see Matter of Animal Legal Defense Fund, Inc. v Aubertine, 119 AD3d 1202, 1205 [2014]). Thus, as neither the Brennan Center nor the individual petitioners have shown injury-in-fact, we are required to conclude that they do not have standing.
This conclusion may appear to be "overly restrictive," because it means that no individual or entity could have standing to pursue this particular judicial challenge (Matter of Association for a Better Long Is., Inc. v New York State Dept. of Envtl. Conservation, 23 NY3d at 6; see Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead, 69 NY2d 406, 413 [1987]). However, petitioners' inability to establish harm that differs from that suffered by the public at large is directly related to the issue of nonjusticiability of political [*5]questions, as set forth above. The issues presented here as to whether the treatment of LLCs under the Election Law should be changed fall within the ambit of "those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the legislative and executive branches" (Roberts v Health & Hosps. Corp., 87 AD3d at 323 [internal quotation marks and citation omitted]). It is precisely because petitioners' claims raise broad policy questions that affect all of the state's voters, citizens and legislators that petitioners cannot establish injury-in-fact. "In a very real sense, the absence of any particular individual or class to litigate [petitioners'] claims gives support to the argument that the subject matter is committed to the surveillance of [respondent and the Legislature], and ultimately to the political process" (United States v Richardson, 418 US 166, 179 [1974]). Accordingly, Supreme Court properly dismissed the petition/complaint. The parties' remaining contentions are rendered academic by this determination.
McCarthy and Pritzker, JJ., concur.




Egan Jr., J. (concurring).


I concur with the majority that this controversy is nonjusticiable, but for a different reason. The challenged act is the 2-2 vote by respondent's commissioners regarding a proposal to amend respondent's 1996 Opinion No. 1 and issue a new opinion regarding campaign contributions for limited liability companies (hereinafter LLCs). If the proposal had been approved by either a 4-0 vote or a 3-1 vote, it would have passed; if the vote had been 0-4 or 1-3, it would have been defeated; or, as happened here, a deadlocked vote of 2-2, depending on whom you ask, would have been defeated or regarded as no action taken. None of this matters in my view because of one key word — "opinion." Just as the Attorney General and the Comptroller — our other colleagues in government — issue opinions on subjects within their areas of expertise from time to time, respondent may certainly issue its own opinions regarding the Election Law. While those opinions, just like those of the Attorney General or the Comptroller, are entitled to great respect and consideration, at the end of the day they are not controlling, but simply an interpretation of what the law is [FN1]. The law is what the law is. Our laws are more resilient than we sometimes give them credit for and sometimes laws written long ago can be given application to modern situations or concepts not envisioned at the time they were enacted. For example, it may be that the corporate campaign contribution limits in Election Law article 14 have pertained to LLCs all along, but no one ever considered that to be the case, perhaps in deference to respondent's opinion to the contrary. In any event, respondent is entitled to its opinion but, because it is just that, it is not the proper subject of judicial intervention.




Lynch, J. (dissenting).


I respectfully disagree with the majority's determination as to both standing and whether this matter presents a nonjusticiable political question.
As to standing, petitioners bear "the burden of establishing both an injury-in-fact and that the asserted injury is within the zone of interests sought to be protected by the statute alleged to have been violated" (Matter of Association for a Better Long Is., Inc. v New York State Dept. of Envtl. Conservation, 23 NY3d 1, 6 [2014])[FN1]. Standing is an aspect of justiciability resting partly on policy considerations that limit court access to "parties that have a genuine stake in the litigation" (id.). The Court of Appeals has instructed that "standing rules should not be heavy-handed," and it has expressed a reluctance "to apply [standing] principles in an overly restrictive manner where the result would be to completely shield a particular action from judicial review" (id. [internal quotation marks and citations omitted]). Here, several of the individual petitioners are either elected representatives in the Legislature seeking reelection or contemplating running for public office. Their basic injury premise is that the ability of a limited liability company (hereinafter LLC) to contribute at higher levels than other business entities places candidates at a competitive disadvantage and undermines the integrity of campaign financing. A related concern is that LLCs contribute in the name of the entity, not the individual members whose names are not disclosed — a consequence that runs counter to the disclosure requirements mandated under the Election Law (see Election Law §§ 14-102 [1]; 14-104 [1]).
In my view, these contentions validate petitioners' claim of an injury-in-fact, for the stark reality is that a viable political campaign often depends in large measure on adequate funding (see Shays v Federal Election Commn., 414 F3d 76, 84, 87 [DC Cir 2005]). Nor does it resolve the stated concerns to suggest that a candidate is free to choose whether to accept contributions from an LLC, for that premise misses the point that candidates who do in fact receive enhanced contributions do so to the disadvantage of opposing candidates. Correspondingly, the decision to make the contribution rests with the contributor, not the candidate. As a consequence, candidates for public office are impacted in a manner "distinct from that of the general public" (Matter of Transactive Corp. v New York State Dept. of Social Servs., 92 NY2d 579, 587 [1998]). This asserted injury falls within the zone of interests sought to be protected under the Election Law, which governs the integrity of campaign financing practices (see Election Law art 14; § 3-102). For these reasons, it is my view that the six individual petitioners have standing. To hold otherwise, as respondent's counsel conceded at oral argument, would effectively mean that no one would have standing to challenge respondent's determination and, further, would insulate the 2016 vote from judicial review — a consequence contrary to the core principles of standing.
In addition, it is my view that petitioner Brennan Center for Justice at NYU School of Law has organizational standing. "To establish standing, an organizational [petitioner] . . . must [*6]show that at least one of its members would have standing to sue, that it is representative of the organizational purposes it asserts and that the case would not require the participation of individual members" (New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d 207, 211 [2004]). As described in the petition, the Brennan Center "is a not-for-profit, non-partisan public policy and law institute that focuses on issues of democracy and justice . . . [and] seeks to bring the ideal of representative self-government closer to reality by working to eliminate barriers to full political participation." Although the Brennan Center does not grant "membership" status to its contributors and volunteers, it fosters the interests of those participants by advocating for a fair democratic election process that mirrors the interests of the individual petitioners in this proceeding.
Petitioners further maintain that this proceeding presents a justiciable question of statutory interpretation subject to review under CPLR article 78. I agree. Under Election Law § 3-102 (1), respondent is authorized to "issue instructions and promulgate rules and regulations relating to . . . election campaign practices and campaign financing practices." Respondent is further required to "study and examine the administration of elections within the state including campaign financing, campaign financing reporting, and campaign practices" (Election Law § 3-102 [9]). In 1994, the Legislature adopted the Limited Liability Company Law creating a new type of business entity (see L 1994, ch 576). At that time, Election Law article 14 imposed defined campaign contribution limitations on corporations and partnerships that were far more restrictive than the limitations imposed on individuals (see Election Law §§ 14-116 [2]; 14-120 [2]). The Election Law did not then, and does not now, address how LLCs should be treated under article 14. Recognizing this gap, respondent's 1996 Opinion No. 1 (hereinafter the 1996 opinion) expressly addressed the question of whether an LLC was subject to the corporate contribution limits of Election Law article 14.
Under the enabling statute, LLCs are defined as, "unless the context otherwise requires, an unincorporated organization of one or more persons having limited liability for the contractual obligations and other liabilities of the business . . . other than a partnership or trust" (Limited Liability Company Law § 102 [m]). For purposes of formation, "[o]ne or more persons" may organize an LLC (Limited Liability Company Law § 203 [a]). A "person" is defined as a "natural person" and various types of business entities, including any association, corporation or general partnership (Limited Liability Company Law § 102 [w]). This broad definition of person allows for individuals and the described business entities to create an LLC. Interpreting these provisions, and relying on an interpretation by the Federal Election Commission (hereinafter FEC) treating LLCs as individuals, respondent concluded that LLCs are persons subject to the contribution limits applicable to individuals under Election Law article 14. This treatment of LLCs has resulted in what the majority aptly describes as the controversial "LLC Loophole," for LLCs enjoy much higher limits for political contributions than do other business entities.
Following respondent's denial of the 2015 proposal to revisit the 1996 opinion, respondent addressed a new resolution in April 2016 seeking to rescind the 1996 opinion and adopt a new rule that would treat an LLC as either a partnership or a corporation, depending on the tax status selected by the entity — a characterization in line with current FEC rules (see 11 CFR 110.1). Considering respondent's ongoing statutory obligation to examine campaign finance practices, this definitional proposal presented a matter of statutory interpretation that respondent was entitled to revisit. The record shows that respondent's commissioners debated the merits of the proposed resolution and then voted in a 2-2 tie. Pursuant to Election Law § 3-212 (2), "[a]ll actions of the board shall require a majority vote of the commissioners." Inasmuch as the motion was not approved by a majority, the motion was effectively denied (see Matter of Tall Trees Constr. Corp. v Zoning Bd. of Appeals of Town of Huntington, 97 NY2d 86, 91 [*7][2001]). That denial is subject to review under CPLR article 78, for whether respondent properly construed the underlying statutory provisions "is a question within the traditional competence of the courts to decide" (Matter of Dental Socy. of State of N.Y. v Carey, 61 NY2d 330, 335 [1984]).
From this record, it is evident that respondent did not approach the categorization of an LLC as a policy question, but rather as a definitional matter keyed into the language of the operative statutory provisions. Pursuant to its regulatory authority, respondent was confronted with defining what campaign financing restrictions should apply to LLCs. Tellingly, no one has suggested that respondent lacked authority to adopt the 1996 opinion — which is an indication that it was not considered a political question then and, in my view, is not a political question now.
We all agree that the Legislature is fully authorized to adopt legislation imposing campaign limitations on LLCs as it has for corporations and partnerships. In fact, efforts have been made in the Legislature to adopt such legislation but to no avail. That legislative history, however, does not in any way indicate approval of respondent's position for "[l]egislative inaction, because of its inherent ambiguity, afford the most dubious foundation for drawing positive inferences'" (Bourquin v Cuomo, 85 NY2d 781, 787-788 [1995] [internal quotation marks and citations omitted]). And by no means does the absence of legislative action in any way abrogate respondent's statutory authority to regulate campaign finance activities.
A few other threshold issues need to be addressed. Respondent's contention that petitioners are collaterally estopped by the 2015 determination is unpersuasive. While both the 2015 and 2016 votes called into question the 1996 opinion, the 2015 proposal simply called for further guidance from staff. By comparison, the 2016 vote addressed a new proposal specifically delineating the treatment of LLCs as either corporations or partnerships. As such, it cannot be said that the votes presented identical issues (see Kaufman v Eli Lilly & Co., 65 NY2d 449, 456 [1985]). Nor is this matter barred by the statute of limitations. While a request for reconsideration of an agency determination generally does not extend the statute of limitations, where "the agency conducts a fresh and complete examination of the matter based on newly presented evidence," the statute of limitations will run from the new determination (Matter of Quantum Health Resources v DeBuono, 273 AD2d 730, 731-732 [2000], lv dismissed 95 NY2d 927 [2000]). Here, respondent considered new information concerning the FEC's changed treatment of LLCs and the influence asserted by LLCs since 1996. As such, respondent's 2016 denial of the proposed resolution triggered the statute of limitations anew.
As to the merits, it is my view that respondent's characterization of an LLC as a person for purposes of imposing the contribution limits of Election Law article 14 was arbitrary and capricious. The fundamental flaw in respondent's interpretation is that it fails to recognize that an LLC constitutes a legal entity, separate and distinct from its individual members. Pointing to the statutory definition of an LLC, respondent reasoned that, as "unincorporated organizations," LLCs could not be treated as corporations or partnerships for purposes of article 14 (see Limited Liability Company Law § 102 [m]). In doing so, however, respondent overlooked the qualifying phrase "unless the context otherwise requires" (Limited Liability Company Law § 102 [m]). In context, it is clear that the Legislature, through Election Law article 14, intended to impose stricter contribution limits on business entities than on individuals. Respondent's construction fails to account for an LLC's separate legal status and, further, fails to foster the purposes of article 14. Respondent's reliance on the definition of "person" in Limited Liability Company Law § 102 (w) is also misplaced. As indicated above, that definition of person includes corporations and partnerships, as well as natural persons. That does not translate into treating an [*8]LLC as a person for purposes of article 14, for, to do so, one logically would also have to treat a corporation and a partnership as a person for article 14 purposes. Of course, such a construction would directly conflict with the contribution limitations imposed on corporations and partnerships under article 14. Respondent's construction further ignores the definitional distinction made between a person and a natural person — the latter necessarily referring to an individual. The point made is that, to properly account for the legal status of an LLC and the limitations imposed by article 14, an LLC must be treated as a business entity for purposes of article 14. Respondent's failure to do so is based on a misinterpretation of the pertinent statutory language and, thus, respondent's denial of the 2016 motion, and its refusal to rescind the 1996 opinion, should be rejected as arbitrary and capricious. That said, because respondent did not address the specific treatment of LLCs outlined in the 2016 resolution (i.e., as either a corporation or a partnership depending on their tax status), the matter should be remitted to respondent for further proceedings on that proposal.
ORDERED that the judgment is affirmed, without costs.



Footnotes

Footnote 1: We note that petitioners do not argue that respondent's 1996 resolution of the LLC question is unlawful or beyond respondent's authority; instead, they assert that the LLC contribution limits established by the 1996 opinion, although lawful, are unwise and should be changed. 

Footnote 2: Contrary to the contention in the dissent, this matter does not involve questions of statutory construction within the traditional arena of judicial resolution. In the 2016 vote, respondent considered altering the 1996 opinion and declined to do so. This determination made no new statutory interpretation, left intact the status quo that had existed since 1996, and did not alter existing rights, responsibilities or circumstances (compare Matter of Tall Trees Constr. Corp. v Zoning Bd. of Appeals of Town of Huntington, 97 NY2d 86, 91-92 [2001]).

Footnote 3: We disagree with the dissent that petitioners may have standing based upon disparities in campaign contributions resulting from the LLC Loophole. Our political system does not mandate equal funding for all candidates. Where, as here, there is no claim of unlawfulness, the fact that such discrepancies occur does not give rise to standing (compare Shays v Federal Election Commn., 414 F3d 76, 83-93 [DC Cir 2005] [candidates suffered injury-in-fact when agency campaign-financing rules conflicted with federal statutory protections, thus creating an illegally structured competitive environment]).

Footnote 4: The Brennan Center is not a membership organization, but asserts that its staff contributors and volunteers play the same role as members. Our determination makes it unnecessary to determine the merits of this claim.

Footnote 1: An opinion of the Attorney General is "an element to be considered but is not binding on the courts" (Matter of American Tel. & Tel. Co. v State Tax Commn., 61 NY2d 393, 404 [1984]; see Matter of Woodburn v Village of Owego, 151 AD3d 1216, 1220 [2017]; Matter of Nelson v New York State Civ. Serv. Commn., 96 AD2d 132, 134 [1983], affd 63 NY2d 802 [1984]). Similarly, where the issue presented is a matter of statutory interpretation, rather than a matter that implicates the expertise of the Comptroller, the Comptroller's interpretation is not entitled to deference (see Matter of Batti v Town of Austerlitz, 71 AD3d 1260, 1262 [2010]; Matter of White v County of Cortland, 283 AD2d 826, 827 [2001], affd 97 NY2d 336 [2002]).

Footnote 1: In land use matters especially, a petitioner must also "show that it would suffer direct harm, injury that is in some way different from that of the public at large" (Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 774 [1991]; see Matter of Sierra Club v Village of Painted Post, 26 NY3d 301, 310 [2015]; Matter of Association for a Better Long Is., Inc. v New York State Dept. of Envtl. Conservation, 23 NY3d at 6).